*FILED UNDER SEAL*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC. | |
| Plaintiff, | |
| v. | Case No.: 2:24-cv-029-JRG-RSP (Lead Case) |
| AT&T INC., AT&T CORP., AT&T COMMUNICATIONS LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC. | |
| Defendants. | |
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC. | |
| Plaintiff, | |
| v. | Case No.: 2:24-cv-124 -JRG-RSP (Member Case) |
| CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, and SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, | **FILED UNDER SEAL** |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(3) AND 12(b)(6) OR, IN THE ALTERNATIVE, TO TRANSFER UNDER 28 U.S.C. § 1404(a)

1

*FILED UNDER SEAL*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  None of the Defendants Reside in Texas ................................................................... 3

II.  None of the Defendants Have a Physical Presence in This District ...................................... 3

    A.  None of the Defendants Provide Any Services in Texas ........................................... 3

    B.  None of the Defendants Have Any Employees in Texas .......................................... 4

    C.  Defendants Do Not Own, Lease, Maintain, Or Operate Property in This District ................................................................................................................ 4

III.  Each Defendant Performs Distinct Business Functions ........................................ 4

IV.  The Majority of Relevant Witnesses and Evidence Are Located in The District of Colorado; No Witnesses or Evidence Is Located in this District ........................... 4

V.  Likely ASSIA Witnesses Do Not Reside in This District ..................................... 6

VI.  Likely Third-Party Witnesses Reside in Colorado And None Reside in This District ................................................................................................................ 6

VII.  Defendants Did Not Have Knowledge of The Asserted Patents Prior to this Lawsuit ................................................................................................................ 7

I.  ASSIA's Complaint Should Be Dismissed Because Venue Is Improper ............................ 8

    A.  Defendants Have No Physical Place Of Business In This District ........................ 10

    B.  Defendants Have No Employees Conducting Business In This District ............. 10

    C.  ██████████ Are Not "Alter Egos" Of Defendants ............................................. 11

II.  In the Alternative, This Case Should Be Transferred to the District of Colorado ........... 14

    A.  ASSIA Could Have Brought This Case in The District of Colorado ................... 15

    B.  Private Interest Factors Favor Transfer to The District of Colorado .................... 16

        1.  The Convenience for and Cost of Attendance for Willing Witnesses Heavily Favors Transfer to the District of Colorado ............... 16

        2.  Availability of Compulsory Process Also Favors Transfer ....................... 18

        3.  Relative Ease of Access to Sources of Proof Favors Transfer .................. 19

        4.  There Are No Practical Problems with Transferring this Case ................. 20

        5.  ASSIA Lacks Any Connection to This District ......................................... 21

    C.  The Public Interest Factors Also Weigh in Favor Of Transfer .............................. 21

        1.  The District of Colorado Has a Strong Local Interest in This Dispute ............................................................................................... 21

        2.  The Median Time to Jury Trial Is At Most Neutral ................................... 22

        3.  The Remaining Public Interest Factors Are Neutral ................................. 23

*FILED UNDER SEAL*

III.   ASSIA's Indirect Infringement Claims Should Be Dismissed Under Rule 12(b)(6) ........23

    A.   Failure To Meet Pre-Suit Knowledge Requirements for Induced or Contributory Infringement ........................................................................................23

    B.   Failure To Adequately Allege Any Infringing Act By Individual Defendants.............................................................................................................25

    C.   Failure To Allege Requisite Intent for Inducement..................................................26

    D.   Failure to Allege "No Substantial Non-infringing Uses" For Contributory Infringement............................................................................................................27

IV.   ASSIA's Willful Infringement Claims Should Be Dismissed Under Rule 12(b)(6) .........28

    A.   Failure To Allege Defendants' Pre-Suit Knowledge Of The Asserted Patents....................................................................................................................29

    B.   Failure To Demonstrate Culpable Conduct............................................................29

## TABLE OF AUTHORITIES

**Page**

### Cases

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ............................................................ 26

*In re Adobe Inc.*,
    823 F. App'x 929 (Fed. Cir. 2020) ............................................................ 18

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
    6:13-cv-307 MHS-JDL, 2014 WL 10291478 (E.D. Tex. Feb. 7, 2014) ............................ 24, 28

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ............................................................ 19

*Artrip v. Ball Corporation*,
    735 F. App'x 708 (Fed. Cir. 2018) ............................................................ 28

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................ 30

*Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*,
    No. CV2110403SRCJSA, 2022 WL 683084 (D.N.J. Mar. 8, 2022) ........................................ 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................ 25

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ............................................................ 26

*Blue Spike, LLC v. Nook Dig., LLC*,
    No. 6:16-CV-1361-RWSJDL, 2017 WL 3263871 (E.D. Tex. July 28, 2017),
    *adopted by sub nom. Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-CV-1361-
    RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017) ................................................ 14

*Celgene Corp. v. Mylan Pharms. Inc.*
    17 F.4th 1111 (Fed. Cir. 2021) ............................................................ 1, 9, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015) ............................................................ 23

*Core Optical Techs., LLC v. Nokia Corp.*,
    No. SACV1902190JAKRAOX, 2020 WL 6126285 (C.D. Cal. Oct. 8, 2020) ........................ 24

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .................. 26, 27

*Correct Transmission LLC v. ADTRAN, Inc.*,
No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ........................... 21

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) .................................................................................. 9, 10

*Diamond Grading Techs. Inc. v. Am. Gem. Soc'y*,
No. 2:14-CV-1161-RWS-RSP, 2016 WL 3902482 (E.D. Tex. Mar. 30, 2016) ................. 29

*Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*,
943 F.3d 239 (5th Cir. 2019) ......................................................................................... 13

*Entropic Commc's, LLC v. Charter Commc's, Inc.*,
No. 22-cv-00125-JRG (May 3, 2023, E.D. Tex.), Dkt. 91 ................................................ 8

*Fractus, S.A. v. TCL Corp.*,
No. 2:20-cv-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021) .................... 28, 29, 30

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ..................................................................................... 27

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ................................................................................ 16, 23

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .................................................................................................. 24, 26

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................... 19

*In re Google*,
949 F.3d 1338 (Fed. Cir. 2020) ..................................................................................... 11

*Greiner v. Am. Motor Sales Corp.*,
645 F. Supp. 277 (E.D. Tex. 1986) ............................................................................... 21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) .............................................................................................. 28, 29, 30

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2008) ..................................................................................... 21

*Kranos IP Corp. v. Riddell, Inc.*,
No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ........................... 9

*Maxell Ltd. v. Apple Inc.*,
5:19-cv-00036-RWS, 2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ............................. 24

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012) ....................................................25

*Motiva Pats., LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019) .................................................24

*North Star Innovations, Inc. v. Toshiba Corp.*,
   No. CV 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016)....................25

*Northstar Systems LLC v. Volkswagen AG*,
   No. 22-cv-00486-JRG, Dkt. 66 (Aug. 20, 2023, E.D. Tex)........................22

*Pitt v. Metro. Tower Life Ins. Co.*,
   No. 18-CV-06609-YGR, 2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ............12, 13

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
   No. CV 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018) ...................25

*Rojas v. Hamm*,
   No. 18-cv-01779-WHO, 2019 WL 3779706 (N.D. Cal. Aug. 12, 2019) ...............12

*In re: Samsung Electronics Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021) .........................................................22

*Spherix Inc. v. Juniper Networks, Inc.*,
   No. CV 14-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) ...................24

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ..................................................................9

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ......................................................14, 16

*In re Tracfone Wireless, Inc.*,
   No. 2021-136, 2021 U.S. App. LEXIS 11388 (Fed. Cir. Apr. 20, 2021) ...........18

*Villarreal v. Wells Fargo Bank*,
   814 F.3d 763 (5th Cir. 2016) ..........................................................8

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .......................................................5, 17

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc)...................14, 16, 17, 19, 20, 22

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ........................................................9

## **Statutes**

28 U.S.C. § 1400(b) ................................................................................ 9, 14, 15

28 U.S.C. § 1404(a) .................................................................1, 2, 6, 14, 16, 23, 30

35 U.S.C. § 271(b) ........................................................................................26

35 U.S.C. § 284 ............................................................................................28

## **Other Authorities**

Local Civil Rule CV-7(a)(1) ...........................................................................2

Fed R. Civ. P. 8 .......................................................................................24, 25

Fed R. Civ. P. 12(b)(3) .............................................................1, 2, 6, 14, 16, 23

Fed R. Civ. P. 12(b)(6) .............................................................1, 2, 3, 23, 28, 30

Fed R. Civ. P. 45 ........................................................................................18

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **CCI** | Charter Communications, Inc. |
| **CCHC** | Charter Communications Holding Company, LLC |
| **SMHC** | Spectrum Management Holding Company, LLC |
| **CCO** | Charter Communications Operating, LLC |
| **CCL** | Charter Communications, LLC |
| **SCI** | Spectrum Communications Indemnity, Inc. |
| **SGC** | Spectrum Gulf Coast, LLC |
| **'996 patent** | U.S. Patent No. 7,809,996 |
| **'398 patent** | U.S. Patent No. 10,848,398 |
| **'654 patent** | U.S. Patent No. 11,050,654 |
| **'108 patent** | U.S. Patent No. 11,477,108 |
| **Asserted Patents** | U.S. Patent Nos. 7,809,996, 10,848,398, 11,050,654, and 11,477,108 |
| **PMA** | Profile Management Application |
| **ASSIA** | Adaptive Spectrum and Signal Alignment, Inc. |
| **Accused PMA Products/Service** | Products that support the PMA of DOCSIS 3.1 (Dkt. 1, ¶35) accused of infringing the '996 patent. |
| **Accused WiFi Products/Services** | Wi-Fi Agile Multiband products carrying the Spectrum brand (Dkt. 1, ¶61), "Spectrum Advanced Internet and WiFi system" that supports OpenSync (Dkt. 1, ¶83), and LAN/WAN devices that "interface Spectrum Advanced Internet and WiFi services" and "which incorporate and utilize OpenSync" (Dkt. 1, ¶¶114, 116) accused of infringing the '398, '654 and '108 patents. |
| **Accused Products/Services** | Collectively, the Accused PMA Products/Service and the Accused WiFi Products/Services. |

## INTRODUCTION

Defendants Charter Communications, Inc. ("CCI"), Charter Communications Operating, LLC ("CCO"), Charter Communications Holding Company, LLC ("CCHC"), and Spectrum Management Holding Company, LLC ("SMHC)" (collectively, "Defendants") respectfully request that the Court (1) dismiss Plaintiff Adaptive Spectrum and Signal Alignment, Inc.'s ("ASSIA") Complaint (Dkt. 1) for improper venue under Rule 12(b)(3), or in the alternative, transfer the case to the clearly more convenient District of Colorado under 28 U.S.C. § 1404(a), and (2) dismiss ASSIA's claims for indirect and willful infringement for failure to state a claim under Rule 12(b)(6).

ASSIA's Complaint should be dismissed under Rule 12(b)(3) because venue in this District is improper. None of the Defendants resides or has a regular and established place of business in this District. Unable to point to specific facts showing that any Defendant has a presence in this District, ASSIA lumps together all Defendants collectively as "Charter" and focuses on the alleged activities of certain of Defendants' non-named subsidiaries in this District. Defendants and their subsidiaries observe their own separate corporate formalities, and therefore the activities of Defendants' subsidiaries cannot form the basis for venue. *See Celgene Corp. v. Mylan Pharms. Inc.* 17 F.4th 1111, 1126-27 (Fed. Cir. 2021).

Even if this Court were to find that venue is proper as to any of the Defendants, the Court should transfer the case under 28 U.S.C. § 1404(a) to the clearly more convenient District of Colorado, which has a much stronger interest in adjudicating this case than this District. First, there are no relevant witnesses or relevant sources of proof in this District. ASSIA is a California corporation with offices in Redwood City, CA and has no presence in this District. Second, the design, development, and operation of the Accused Products/Services was, and continues to be,

directed and/or carried out by employees at the ███████[1] within 16 to 23 miles from the United

Stated District Court for the District of Colorado. Third, there are relevant third-parties located in

Colorado. Fourth, the vast majority of inventors of the Asserted Patents are located in California,

and those individuals will have to travel regardless of whether the case is litigated in the District

of Colorado or this District.

ASSIA's indirect and willful infringement claims should be dismissed for failure to state

a claim under Rule 12(b)(6). As to indirect infringement, ASSIA fails to plausibly allege that

Defendants had prior knowledge of the Asserted Patents or that any Defendant individually

committed an act of indirect infringement. In addition, ASSIA does not adequately plead specific

intent as to inducement or that the Accused Products/Services lacked substantial non-infringing

uses as to contributory infringement. ASSIA's willful infringement claims are similarly

deficient—the Complaint fails to plausibly allege that Defendants had prior knowledge of the

Asserted Patents and does not contain factual assertions supporting a plausible inference of

culpable conduct.

## STATEMENT OF THE ISSUES

Pursuant to Local Civil Rule CV-7(a)(1), the issues to be decided by the Court are:

(1) Whether ASSIA's Complaint should be dismissed for improper venue under Rule 12(b)(3), because Defendants do not reside in this District and Defendants do not have regular and established places of business and have not committed acts of infringement in this District; or, in the alternative, whether the case should be transferred under 28 U.S.C. § 1404(a) to the clearly more convenient District of Colorado;

(2) Whether ASSIA's indirect infringement claim should be dismissed under Rule 12(b)(6), because the Complaint does not plausibly allege that Defendants had the requisite prior knowledge of the Asserted Patents, that any one Defendants each committed an act of indirect infringement, that Defendants had the required specific intent as to inducement,

---

[1] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

or that the Accused Products lacked any substantial non-infringing uses as to contributory infringement; and

(3)    Whether ASSIA's willful infringement claim should be dismissed under Rule 12(b)(6), because the Complaint fails to plausibly allege that Defendants had the requisite prior knowledge of the Asserted Patents and does not contain any factual assertions supporting a plausible inference of culpable conduct.

## <u>FACTUAL BACKGROUND</u>

### I.    None of the Defendants Reside in Texas

As ASSIA acknowledges in its Complaint, none of the Defendants are incorporated in Texas. Dkt. 1, ¶¶3, 5-7. Nor do they maintain principal places of business in Texas. Declaration of Connie Kovach ("Kovach Decl."), ¶¶5, 8-10. Defendants are Delaware corporations with principal places of business in either Stamford, CT or St. Louis, MO. *Id.*

### II.    None of the Defendants Have a Physical Presence in This District

#### A.    None of the Defendants Provide Any Services in Texas

Defendants are all holding companies that do not provide any services anywhere, including the accused high-speed Internet services. Kovach Decl.,¶¶5, 8-10. Defendants are many levels removed from the actual subsidiaries (none of which are named in the Complaint) that carry out the day-to-day business related to the Spectrum brand. None of the four named Defendants are even permitted to provide cable services in the State of Texas, because none hold the State-Issued Certificate of Franchise Authority ("SICFA") from the Public Utility Commission of Texas, which is required for all cable service providers operating in Texas.[2] Declaration of Paul Abbott ("Abbott Decl."), ¶¶5, 6. In fact, any Spectrum-brand related activities in this District are carried out by ███████████████████████████ . ███████████████████████████ . Abbott Decl., ¶7; Kovach Decl. ¶12.

---

[2]    *See* https://www.puc.texas.gov/industry/communications/business/sicfa/sicfa.aspx .

### B. None of the Defendants Have Any Employees in Texas

Defendants have corporate officers but do not have employees. Kovach Decl. ¶11. And none of Defendants' corporate officers reside in Texas. Rather, ███████████, employs the individuals who provide various business functions, including in support of the day-to-day Spectrum-brand related business activities in Texas. *Id.* at ¶12. Defendants do not participate in the hiring and firing of ███ employees. *Id.* at ¶13.

### C. Defendants Do Not Own, Lease, Maintain, Or Operate Property in This District

Defendants do not have regular and established places of business in this District. They do not own, lease, maintain, or operate any property in this District, including the four leased properties identified in ASSIA's Complaint. Dkt. 1, ¶15; Declaration of Teresa Nelson ("Nelson Decl."), ¶¶5-7. Instead, those four properties are leased and maintained by ███ Nelson Decl., ¶6. Defendants do not have any employees working at any of the properties, because, as discussed above, Defendants do not have any employees. Rather, it is the employees of ███, an entirely different entity, who maintain and operate those premises.

## III. Each Defendant Performs Distinct Business Functions

CCI is the ultimate corporate parent of the organization, but CCI does not have its own operations. CCI maintains its corporate records separate from those of its subsidiaries and conducts meetings of its shareholders and directors separate from its subsidiaries. Kovach Decl., ¶7. CCI does not direct its subsidiaries' business activities. *Id.* Similarly, SMHC, CCHC, and CCO each maintain their own corporate identity and structure. *Id.* at ¶7.

## IV. The Majority of Relevant Witnesses and Evidence Are Located in The District of Colorado; No Witnesses or Evidence Is Located in this District

ASSIA's Complaint accuses various Spectrum-branded systems and products of infringing the Asserted Patents. The design, development, and operation of the Accused

Products/Services was, and continues to be, directed and/or carried out by employees at the ████████████ Boglioli Decl., ¶7. Other potentially relevant groups are also located in Colorado. *Id.*, ¶¶ 9, 10, 13, 14, 16, 21. Furthermore, Defendants are not aware of any witness residing in this District who has relevant knowledge. *Id.*, ¶23.

With respect to the Accused PMA Products/Service, the relevant teams and engineers are located ████████████████████████████████ ███████████████████ have the relevant technical knowledge. Boglioli Decl., ¶9. The relevant employees on those teams are located in Colorado ██████████████ and relevant documents (including the creation and maintenance of any source code) are created and maintained by the employees at the ████████. Boglioli Decl., ¶¶9, 11. Further, the ████████████████████████, and relevant employees are located at the ████████, as are the relevant employees in the ██████████ ██████████████████. Boglioli Decl., ¶9, 10.

With respect to the Accused WiFi Products/Services, the relevant teams and engineers are located at the ████████. Engineers on ████████████████████ ███████████████████████████████ ██████████████ have the relevant technical knowledge. Boglioli Decl., ¶13. The relevant employees on those teams are located in Colorado and work at the ████████ ██████, and relevant documents are created and maintained by the employees at the ████ ██████. Boglioli Decl., ¶¶13-15. Furthermore, the ████████████████████ ██████████████, and relevant employees are located at the ████████, as are the relevant employees in the ████████████████████ ██████. Boglioli Decl., ¶¶13-14.

ASSIA claims that Defendants have knowledge of ASSIA's '108 patent because it was purportedly cited during the prosecution of U.S. Patent No. 11,109,082 (the "'082 Patent"), assigned to CCO. Dkt. 1, ¶115. █████████████████████████████ ███████, both reside in Colorado and work at the ███████ *Id.* at ¶21. Other relevant witnesses, such as record custodians of █████████████████, are in or near ███████ ███████. *Id.* at ¶22. Witnesses with relevant knowledge regarding the ███████ ███████ of Spectrum-brand services are located in or near █████████████. *Id.*

## V.      Likely ASSIA Witnesses Do Not Reside in This District

ASSIA is a California corporation with its only office located in Redwood City, CA. Dkt. 1, ¶ 2. ASSIA's Complaint does not allege that ASSIA owns property, maintains employees, or carries out business activities in this District. Based on public information, it appears that ASSIA's only connection to this District is that it is a plaintiff in two patent infringement lawsuits.[3] Ex. 1.[4] ASSIA does not identify any relevant witnesses in its Complaint, but witnesses likely to have relevant knowledge include John Cioffi, ASSIA's CEO and inventor of the '996 patent and Peter Chow, ASSIA's CTO and the inventor of the '108 patent. Exs. 2, 3 (LinkedIn Pages). Both witnesses reside in Redwood City, CA.

## VI.     Likely Third-Party Witnesses Reside in Colorado And None Reside in This District

At least three third-party manufacturers of the Accused Products/Services are located in Colorado and no third-party manufacturer resides in this District. ████████████████

---

[3]     Although the two cases were recently consolidated, Dkt. 15, Defendants believe that the cases should not be consolidated because they do not share any common defendants, patents, or accused products.

[4]     Unless otherwise specified, all numbered Exhibits refer to the Exhibits attached to the accompanying Declaration of Deepa Acharya in Support of Defendants' Motion to Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) or, In the Alternative, to Transfer under 28 U.S.C. § 1404(a).



The remaining third-party manufacturers of the Accused Products/Services do not reside in this District. Exs. 8-16.[5]

The named inventors do not reside in this District. Ardavan Tehrani ('108 and '654 patents) resides in Menlo Park, CA. Ex. 17. Marc Goldburg ('108 and '654 patents) resides in Redwood City, CA. Ex. 18. Leonard Dagum ('654 patent) resides in Redwood City, CA. Ex. 19. Philip Bednarz ('654 patent) resides in Palo Alto, CA. Ex. 20. And finally, Wonjong Rhee ('108, '398, and '654 patents) resides in Seoul, Korea. Ex. 21.

The patent prosecuting attorneys do not reside in this District. Gregory Caldwell ('996 and '654 patents) resides in Portland, OR. Ex. 22. Usman A. Mughal ('398 and '654 patents) resides in Beaverton, OR. Ex. 23. And Michael North (all Accused Patents) resides in Palo Alto, CA. Ex. 24.

## VII.  Defendants Did Not Have Knowledge of The Asserted Patents Prior to this Lawsuit

ASSIA alleges it sent Defendants a letter in November 2019 notifying Defendants that it was "benefiting from the use of ASSIA's patented technology in the products and services that Charter provides to its customers, including those set forth in this Complaint." Dkt. 1, ¶¶54, 75, 106, 143. However, Defendants did not receive a letter from ASSIA in November 2019, and

_____

[5]

ASSIA did not quote such a letter in its Complaint or attach it as an exhibit. Boglioli Decl., ¶17.

ASSIA did send a letter on August 19, 2020. *See* Boglioli Decl., Ex. A. In its letter, ASSIA states, "Charter benefits from use of ASSIA's innovative technology in providing wireless service to its customers. We would like to begin discussions with Charter to conclude a license to the ASSIA wireless patent portfolio." *Id.* at 2. But ASSIA's August 2020 letter did not specify which patents were included in its "patent portfolio" or which products might be practicing any patent, nor did it attach a list of those patents. *Id.*

ASSIA's letter was responded to on October 9, 2020 and further information was requested, including the details relating to ASSIA's asserted patent portfolio. *See* Boglioli Decl., Ex. B[6]. The October 2020 letter, specifically asked ASSIA to provide some basic information regarding "the patents [ASSIA] believes may be of interest to Charter" and "the reasons why [ASSIA] believes the patents may be of interest to Charter and claim charts substantiating ASSIA's position." *Id.* ASSIA never responded. Boglioli Decl., ¶20.

## ARGUMENT

### I.    ASSIA's Complaint Should Be Dismissed Because Venue Is Improper

Defendants are not subject to venue in this District.[7] ASSIA bears the burden of

---

[6]    ASSIA's Complaint relies on "the past dealings and interactions and communications between ASSIA and Charter" to establish Defendants' purported knowledge. Dkt. 1, ¶¶54, 76, 107, 135. ASSIA's August 19, 2020 letter and CCI's response may be considered in this motion. *Villarreal v. Wells Fargo Bank*, 814 F.3d 763, 766 (5th Cir. 2016) ("The court may, however, also consider [d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." (internal quotation omitted).

[7]    Defendants are aware of this Court's previous decision in *Entropic Commc's, LLC v. Charter Commc's, Inc.*, No. 22-cv-00125-JRG (May 3, 2023, E.D. Tex.), Dkt. 91 (the "*Entropic* Order"). The *Entropic* Order only addresses CCI, not the other named Defendants. Defendants respectfully disagree with the *Entropic* Order because, as explained below, in finding "Charter is Spectrum and Spectrum is Charter," the *Entropic* Order failed to distinguish between CCI (the parent company that did not perform any services) on the one hand and the specific Charter

establishing that venue in this District is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). Venue in patent cases is governed exclusively by 28 U.S.C. §1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520-21 (2017). Under Section 1400(b), venue is only proper (1) in the district in which the defendant resides, or (2) where it has a regular and established place of business and has committed acts of infringement. 28 U.S.C. §1400(b). A corporation "resides only in its state of incorporation for the purpose of the venue statute." *TC Heartland*, 137 S. Ct. at 1517. In considering a motion to dismiss for improper venue, a district court may look beyond the facts pleaded in the complaint. *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017). Facts relating to venue pled in the complaint are accepted as true "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Id.*

As ASSIA's Complaint acknowledges, Defendants are not incorporated in Texas. Dkt. 1, ¶¶3, 5-7. Thus, to establish that venue is proper, ASSIA bears the burden of showing that Defendants each have a regular and established place of business in this District. *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). To do so, ASSIA must show that: (1) Defendants have "a physical place in the district"; (2) "it must be a regular and established place of business"; and (3) "it must be the place of [Defendants]. *Id.* Because ASSIA cannot meet any of these requirements, ASSIA's Complaint should be dismissed under Rule 12(b)(3).

---

subsidiary actually carrying out the accused Spectrum brand services on the other hand. Venue cannot be imputed from a subsidiary to its parent company. *See Celgene Corp. v. Mylan Pharms. Inc.* 17 F.4th 1111, 1126-27 (Fed. Cir. 2021).

### A.    Defendants Have No Physical Place Of Business In This District

None of the four physical locations identified in ASSIA's Complaint is owned or leased by any of the Defendants. Nelson Decl. ¶¶5-6. Rather, a different entity, ███, is the sole lessee of all four physical locations. *Id.* at ¶6. ███ is an indirect subsidiary of CCI, separate from SMHC, CCHC, and CCO. The Complaint does not allege that any of the Defendants "exercises attributes of possession or control over" the identified properties, or that any of the Defendants "lists the alleged place of business" anywhere on their website. *Cray*, 871 F.3d at 1363-64. Rather, ASSIA attempts to gloss over these key defects by pointing to the "Spectrum logo" on the stores at those locations (Dkt. 1, ¶16). But merely using the Spectrum-brand name, without more, does not associate each Defendant—CCI, SMHC, CCHC, and CCO—with these physical locations within the District, especially when none of the Defendants is the actual entity carrying out Spectrum brand services. *See Cray*, 871 F.3d at 1363-64.

Nor do any of the Defendants maintain operations out of the four identified properties, or any other properties in Texas. Nelson Decl., ¶7. CCI, SMHC, CCHC, and CCO, separately and individually, do not directly conduct commercial business with the public, including in Texas. Kovach Decl., ¶¶5, 8-10. Defendants do not sell any product or provide any services anywhere. *Id.* Defendants do not maintain the cable headend that is allegedly located in this District. Dkt. 1, ¶¶19-20. Indeed, Defendants are not even permitted to provide cable services in the State of Texas because they lack the requisite permit to do so. *See supra* Factual Background, Section II.A (cable service providers within Texas must obtain SICFA from the Public Utility Commission of Texas); Abbott Decl., ¶¶5-6. Thus, Defendants do not maintain operations anywhere in this District.

### B.    Defendants Have No Employees Conducting Business In This District

"[A] 'regular and established place of business' requires the regular, physical presence of

an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). None of the Defendants have any employees, let alone in Texas. Kovach Decl., ¶11. Instead, all the individuals carrying out the day-to-day business operations at the four physical locations identified in the Complaint are employees of non-party ███, another indirect subsidiary of CCI. *Id.* at ¶12. ███ employees are not employees or agents of CCI, SMHC, CCHC, or CCO. *Id.* CCI, SMHC, CCHC, and CCO do not participate in the hiring or firing of ███ employees. *Id.* at ¶13.

C.    ███████    Are Not "Alter Egos" Of Defendants

ASSIA alleges that "Defendants have not maintained corporate separateness" because some unspecified "Charter entities" shared invoices with "Spectrum," and that "Spectrum's presence and alleged acts of infringement" are somehow "attributable and imputed to" non-specified "Charter" entities for venue purposes. Dkt 1, ¶¶17-18. It is unclear which "Charter entities" allegedly share "invoices" with "Spectrum," but ASSIA's argument is unavailing.

Defendants observe all required corporate formalities. Kovach Decl., ¶7. ASSIA does not allege otherwise. CCI, the parent company of the organization, maintains its corporate records separate from its subsidiaries, including SMHC, CCHC, CCO, SGC, and CCL. *Id.* CCI conducts meetings of its shareholders and directors separate from its subsidiaries, and each of CCI's subsidiaries, in turn, maintains its own corporate, partnership, or limited liability company status, identity, and structure. *Id.* Each entity is separate and distinct from one another.

ASSIA attempts to meet its burden by conflating all entities within the Charter organization as "Charter entities," "Charter Communications," and "Charter." But lumping all entities that bear the "Charter" name—regardless of whether or not they are defendants in this case—does not morph them into one company and does not discharge ASSIA's burden to

plausibly allege wrongdoing by the specific, actual named Defendants. Courts are clear that the fact that more than one company operates under the same trade name does not preclude a finding of corporate separateness, especially for companies with a corporate structure like Defendants. *Celgene Corp. v. Mylan Pharms. Inc.* illustrates this point. 17 F.4th 1111 (Fed. Cir. 2021). Like ASSIA, the plaintiff in *Celgene* tried to impute the activities of a subsidiary to its parent company for venue purposes by pointing to their "shared marketing, branding, [] trade names" and the "interrelatedness" of defendants' entities. *Id.* at 1126. The Federal Circuit rejected that argument and declined to find alter ego "even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have significant economic relationship with the parent." *Id.* Critically, the Federal Circuit cautioned that "corporate form is not readily brushed aside" and that "alter ego is applied only if the record clearly supports disregard of the corporate fiction on grounds of fundamental equity and fairness." *Id.* at 1127.

ASSIA's allegation that "Defendants function as an integrated organization in the operation of Defendants' business operations" fares no better. Dkt. 1, ¶18. "Courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos." *Pitt v. Metro. Tower Life Ins. Co.*, No. 18-CV-06609-YGR, 2020 WL 1557429, at *5 (N.D. Cal. Apr. 1, 2020). Similarly, "just because entities present themselves as 'one integrated company' for marketing purposes does not, on its own, establish that companies are alter egos." *Rojas v. Hamm*, No. 18-cv-01779-WHO, 2019 WL 3779706, at *10 (N.D. Cal. Aug. 12, 2019); *see also Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.*, No. CV2110403SRCJSA, 2022 WL 683084, at *5 (D.N.J. Mar. 8, 2022) ("[T]he fact that the parent and subsidiary share the same 'brand' is insufficient."). This is especially the case where, as here, the "size and complexity of the corporate structure" makes it reasonable to

for separate entities within the same corporate structure to hold themselves out under the same brand name. *See Pitt*, 2020 WL 1557429 at *5.[8]

Notably, in an apparent effort to paint the nebulous but incorrect image that "Charter is Spectrum," ASSIA flips back and forth as to what it wants "Spectrum" to mean in the Complaint. In some places, ASSIA suggests that "Spectrum" is "a brand or trade name of Charter Communications[.]" Dkt. 1, ¶17. In other places, however, ASSIA seems to imply that "Spectrum" is a physical entity, or even a group of entities that "share invoices" with Charter, has "employees" who are agents of "Charter Communications," and is capable of having a "presence" and committing "acts of infringement." *Id.*, ¶¶17-18. Contrary to ASSIA's suggestions, "Spectrum" is not a physical entity—it is a brand name for certain cable and Internet services. Boglioli Decl., ¶5. A brand name cannot hire employees or "commit acts of infringement," and it certainly is not equivalent to the entire Charter organization.

The only place in the Complaint where ASSIA makes an effort to separate Defendants from the nebulous "Charter entities" is where it alleges that CCI, SMHC, and CCHC "provide management services for the cable systems owned or operated by their subsidiaries." Dkt. 1, ¶8. That threadbare allegation, which does not even mention CCO, fails to include facts showing that CCI, SMHC, and CCHC "exert control" over the subsidiaries carrying out business in this District. This is insufficient to imply an alter ego relationship between Defendants and ███. *See Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251-52 (5th Cir.

---

[8]     In the *Entropic* Order, this Court found that "Charter and its subsidiaries 'act as a single enterprise.'" *Entropic*, No. 22-cv-00125, Dkt. 91 at 19. However, the Court did not take into account the size and complexity of the Charter corporate structure, making it reasonable for separate entities within the same corporate structure to hold themselves out under the same brand name. Indeed, to find otherwise would lead to the bizarre outcome that subsidiary entities can rarely be considered as their own separate entities, even if they were properly formed in compliance with state corporate laws.

2019) (refusing to find alter ego relationship between Walt Disney Company's subsidiary IP entities and retail entities where plaintiff made the similar "conclusory assertion" that "the infringement by all the . . . Disney companies is . . . interconnected and tightly controlled but includes no facts explaining how Disney's retail entities or parent corporation exert such control"); *see also Blue Spike, LLC v. Nook Dig., LLC*, No. 6:16-CV-1361-RWSJDL, 2017 WL 3263871, at *3 (E.D. Tex. July 28, 2017), *adopted by sub nom. Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-CV-1361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017) ("The mere existence of a [] subsidiary in a judicial district does not, by itself, suffice to establish venue over the subsidiary's parent corporation.").

In short, none of ASSIA's allegations is sufficient for the Court to find that Defendants have failed to maintain corporate separateness. Venue, therefore, cannot be imputed to CCI based on the activities of its subsidiaries ██████████. And because the Complaint lacks any specific allegations connecting the remaining Defendants, namely SMHC, CCHC, and CCO, to ██████████, venue cannot be imputed as to any of these other Defendants. Venue is improper, and ASSIA's complaint should be dismissed under Rule 12(b)(3).

## II.     In the Alternative, This Case Should Be Transferred to the District of Colorado

Even if the Court were to find that venue is proper under 28 U.S.C. § 1400(b), this case should be transferred to the District of Colorado under 28 U.S.C. § 1404(a), as it is a more convenient forum. Whether a venue is convenient forum is governed by Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also In re TikTok, Inc.,* 85 F.4th 352, 357 (5th Cir. 2023).

To evaluate transfer under 28 U.S.C. § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545

F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If this threshold is satisfied, the district court should grant a motion to transfer venue where "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration (1) "the cost of attendance for willing witnesses"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the relative ease of access to sources of proof"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

Here, ASSIA could have brought this case in the District of Colorado, and the private and public factors all demonstrate that the District of Colorado is clearly a more convenient forum than this District. For the same reasons this Court transferred the *Digital Broad. Sols.* case to the District of Colorado, the Court should also transfer this case to the District of Colorado. Case No. 2:22-cv-00335-JRG, Dkt. 48 (E.D. Tex. Jun. 21, 2023) (Ex. 25).

### A.    ASSIA Could Have Brought This Case in The District of Colorado

As a threshold matter, ASSIA could have originally brought this case in the District of Colorado. CCHC and non-party SCI own and/or lease four physical locations in Colorado, forming the "████████████" where the Accused Products/Services are developed and maintained. Boglioli Decl., ¶6. The ████████████ has more than 2,900 employees and is the largest campus in the nation for CCL employees. *Id.* at ¶7. CCHC "has a regular and established place of business" in Colorado and can be sued there. 28 U.S.C. §1400(b). The transfer analysis, therefore, turns on the private and public interest factors.

### B.    Private Interest Factors Favor Transfer to The District of Colorado

The private factors strongly favor transfer to the District of Colorado because it is a more convenient forum, not just for Defendants' witnesses, but also third parties that reside in Colorado and potential ASSIA witnesses and third party inventors who all reside in California. The bulk of the relevant evidence is created and maintained in the District of Colorado, including technical and operational documents. In contrast, this case has no connection to this District.

### 1.    The Convenience for and Cost of Attendance for Willing Witnesses Heavily Favors Transfer to the District of Colorado

The convenience of the witnesses is "probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit uses a "100-mile threshold" rule in assessing this factor, that is, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok*, 85 F.4th at 361. The Fifth Circuit calls this an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time . . . meal and lodging expenses" and time "witnesses must be away from their regular employment." *Id.* (citing *Volkswagen*, 545, F.3d at 315 (*Volkswagen II*)). Witnesses also suffer "personal costs associated with being away from work, family, and community when they testify far from home." *Id.* (internal quotation marks omitted).

As discussed above, Defendants' potential witnesses, including engineers with technical knowledge of the Accused Products/Services, product managers and employees with knowledge of the deployment of the Accused Products/Services, witnesses with knowledge regarding the contracting and procurement of equipment necessary to support the Accused Products/Services, and inventors of CCO's '082 Patent, who allegedly have knowledge of the accused '108 Patent,

all reside in Colorado and work at the ███████—with the furthest only 23 miles from the District of Colorado courthouse. Boglioli Decl., ¶6.

For all these witnesses, "it is more convenient [] to testify at home" in the District of Colorado. *See Volkswagen II*, 545 F.3d at 317. Travelling to Marshall, TX from Denver requires at least a two-hour flight from Denver to Dallas plus a three-hour car ride from Dallas to Marshall, not including time spent traveling to and from and waiting at the airport. Exs. 28-29. Long travel time means witnesses will inevitably need to stay in Marshall overnight if they were to testify at trial. Aside from the long trips to Marshall, overnight stays will greatly disrupt the professional and personal lives for these employees while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. If, however, this case is transferred to the District of Colorado, knowledgeable witnesses can practically testify "at home." *See Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour."). Like *Digital Broad. Sols.* (Ex. 25 at 11), all Defendants' relevant technical witnesses are located in Colorado. Boglioli Decl., ¶¶6, 9, 13.

Although certain of Defendants' witnesses with knowledge of finance and marketing issues are not in Colorado (Boglioli Decl., ¶22), Denver is still more convenient for these out-of-state witnesses. As this Court recognized in *Digital Broad. Sols.*, "Denver is a *major hub for several airlines[.]*" Ex. 25 at 13 (emphasis added). Additionally, just like *Digital Broad. Sols.*, out-of-state employees will be able to use the offices in the ███████ to "minimize the inconveniences caused by being away from their home [] offices." *Id.* at 12. Save for these small number of potential out-of-state witnesses, the vast majority of Defendants' witnesses relevant to

this case are located in the District of Colorado.

The convenience of ASSIA witnesses also favors transfer to the District of Colorado. As noted above, ASSIA is a California company and potential ASSIA witnesses are located in Northern California. *See supra*. For them, traveling from Northern California to Denver (about a three-hour flight) is significantly more convenient than traveling to Marshall (nearly a three-hour flight plus a three-hour car ride). Exs. 30-31.

Given that a significant number of potential witnesses will greatly benefit from having this case tried in the District of Colorado, and no relevant witness resides in this District, transfer is appropriate. The facts here more strongly favor transfer with respect to this factor than the facts in *Digital Broad. Sols.*, where this Court granted transfer despite one of the defendant's witnesses working in this District—here there are no witnesses in this District. *See Digital Broad. Sols.* (Ex. 25) at 13; *see also In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (finding transfer appropriate when the defendant "identified a significant number of its own employees as potential witnesses who reside in the [transferee venue]"); *In re Tracfone Wireless, Inc.*, No. 2021-136, 2021 U.S. App. LEXIS 11388, at *3, 6 (Fed. Cir. Apr. 20, 2021) (finding that the convenience of witnesses favored transfer where "no party identified any witness residing in the [transferor venue]" and "several of [defendant]'s likely employees resid[ed] in the transferee venue"). This most important factor strongly favors transfer.

### 2.    Availability of Compulsory Process Also Favors Transfer

Rule 45 permits a court to subpoena witnesses to attend trial but that subpoena power is limited to "within 100 miles" of the courthouse or "within the state" if the witness resides, is employed, or regularly transacts business in person within the state. Fed. R. Civ. P. 45(c)(1)(A). This factor also favors transferring.

At least three third-party manufacturers that supply the equipment used in the Accused

Products/Services have offices in Colorado (███████████████). *See supra* Factual

Background, Section VI. The District of Colorado has subpoena power over these third-party

manufacturers while this District only potentially has subpoena power over one (████████

Dallas office). The remaining non-party witnesses, including third-party manufacturers,

inventors, and prosecuting attorneys of the Asserted Patents, are neither in Colorado nor in Texas

and "have no effect on the balancing." *See supra*; *see also Digital Broad. Sols.*, Ex. 25 at 11

(finding this factor favored transfer where third party witnesses with relevant information resided

in Colorado). Therefore, on balance, this factor also tips in favor of transfer.

### 3.    Relative Ease of Access to Sources of Proof Favors Transfer

In balancing this factor, courts consider "whether the proposed transferee venue will

allow more convenient access to the evidence." *Volkswagen II*, 545 F.3d at 316. "In patent

infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.

Consequently, the place where the defendant's documents are kept weighs in favor of transfer to

that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Here, the Accused Products/Services were developed at the ██████████, which

employs over 2,900 people dedicated to developing and operating the Accused

Products/Services. Boglioli Decl., ¶7. As explained above, the relevant technical witnesses and

witnesses related to the operations, procurement, and business of the Accused Products/Services

all reside in Colorado and work at the █████████. Documents relevant to the Accused

Products/Services, including any source code in Defendants' possession, were created and

maintained by these Denver-based witnesses—and therefore the custodians of key documents are

located in the Denver area. Boglioli Decl., ¶¶11, 15, 28. The court must consider the location of

these "document custodians, which may bear on the ease of retrieval," which in this case is in the

District of Colorado. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov.

15, 2021). Indeed, this Court in *Digital Broad. Sols.* found transfer to the District of Colorado proper where, as here, "source code and other documentary evidence" are maintained "at [the defendant's] offices in Colorado." Ex. 25 at 9. Additionally, at least three third-party manufacturers have offices in Colorado. *See supra*. These three third-party manufacturers likely have document custodians also located in Colorado.

No relevant sources of proof are located in this District. While ASSIA points to four physical locations bearing the Spectrum logo, three of these locations are customer-facing retail stores and do not house, or have access to, technical documents related to the Accused Products/Services. Boglioli Decl., ¶¶25-26. The remaining location is a mixed-used location that houses ████████████████████████████████████████. *Id.* at ¶27. These personnel are not in any way involved the Accused PMA Products/Service. *Id.* Nor were they involved in the design or development of the Accused WiFi Products/Services. *Id.* To the extent that ████████████████████████ become relevant, those teams are headquartered at the ██████████████ and any relevant witnesses and any relevant documentation would be created and maintained by employees at the ██████████. *Id.* Furthermore, this Court has already rejected a similar argument in *Digital Broad. Sols.* Ex. 25. There, plaintiff argued that there were sources of proof in this District because the infringing products were installed there. *Id.* at 9. However, this Court found that this argument suggests that "evidence . . . may be located throughout the country," but that "does not completely outweigh the highly relevant evidence known to be in Colorado." *Id.* Because it is easier to access the relevant sources of proof from the District of Colorado than this District, this factor strongly weighs in favor of transfer.

### 4.    There Are No Practical Problems with Transferring this Case

This last private factor permits the Court to consider issues that relate to "making trial of a case easy, expeditious, and inexpensive." *Volkswagen*, 454 F.3d at 315. This factor favors

transfer when, as here, "most witnesses are present in the transferee forum and the plaintiff has no presence in the [transferor district]." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021).

Again, all potential technical witnesses and some third-party manufacturers are in the District of Colorado, a majority of potential ASSIA and third-party witnesses are significantly closer to the District of Colorado than this District, and the bulk of the evidence and relevant sources of proof are in the District of Colorado. In contrast, there is no witness, evidence, or source of proof in this District. Furthermore, this case is at its nascent stage. The pleadings are not closed and no discovery has been conducted. There will be no inconvenience to start anew in the District of Colorado. Thus, this factor also greatly weighs in favor of transfer.

### 5.    ASSIA Lacks Any Connection to This District

Though not an independent private factor, courts recognize that a plaintiff's choice of forum may be due some deference in the transfer analysis. But where, as here, none of the witnesses, evidence, or source of proof are within this District, ASSIA's choice of forum should be given minimal consideration. *See Greiner v. Am. Motor Sales Corp.*, 645 F. Supp. 277, 279 (E.D. Tex. 1986) ("However, where none of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration."). Accordingly, all the private factors weigh in favor of transfer.

### C.    The Public Interest Factors Also Weigh in Favor Of Transfer

### 1.    The District of Colorado Has a Strong Local Interest in This Dispute

The District of Colorado has a strong local interest in this case, "because the cause of action calls into questions the work and reputation of [] individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008). As discussed above, CCHC has a strong presence in the District of Colorado. The ███████████████

██████ and it houses more than 2,900 ████ employees. Boglioli Decl., ¶7. The Accused

Products/Services were developed there; and the relevant personnel, document custodians, and

ongoing activities relating to the Accused Products/Services are all primarily located in the

District of Colorado. The strong connection between the Accused Products/Services and the

District of Colorado means the District of Colorado has a far stronger local interest in the case

than this District. *See In re: Samsung Electronics Co., Ltd*., 2 F.4th 1371, 1380 (Fed. Cir. 2021)

(finding that the Northern District of California had "a legitimate interest in adjudicating [patent

infringement accused products developed in the district] 'at home'").

This District, on the other hand, has no interest in protecting ASSIA's patents or any

other interest in this case, given ASSIA's lack of any connection to this District. Moreover,

ASSIA's general infringement allegations in its Complaint have no specific ties to this District

that could not also be drawn to any other districts where Spectrum Internet service is provided.

*See Volkswagen II*, 545 F.3d at 318 (noting connections that "could apply virtually to any

judicial district or division in the United States" "leaves no room for consideration of those

actually affected—directly and indirectly—by the controversies and events giving rise to a

case"). Here, because the District of Colorado has a far stronger local interest in this case than

this District, the case should be decided in the District of Colorado.

### 2.     The Median Time to Jury Trial Is At Most Neutral

Based on statistics for cases filed after January 1, 2008, the median time to jury trial in

patent cases in the District of Colorado is 34.3 months, and 23 months for this District. Exs. 26,

27. While time to trial is faster in this District than in the District of Colorado, this Court has

previously found this factor to be neutral where the two parties are not competitors. *See*

*Northstar Systems LLC v. Volkswagen AG*, No. 22-cv-00486-JRG, Dkt. 66 at 16 (Aug. 20, 2023,

E.D. Tex). Here, just as in *Northstar*, ASSIA does not allege that Defendants are its competitors.

Further, while courts consider the "speed with which a case can come to trial and be resolved[,]" (*Genentech, Inc.*, 566 F.3d at 1347), court congestion is considered "the most speculative" factor. *Id.* When "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* Thus, this factor is at most neutral.

### 3.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are also neutral. Both this District and the District of Colorado are well-versed in patent law and are capable of applying it. Nor are there any issues of conflict of laws or application of foreign law.

While the last two public factors are neutral, the first public factor strongly favors transfer. Overall, the private and public factors taken together strongly favor transfer. Therefore, if this Court were to deny Defendants' Rule 12(b)(3) motion, the Court should transfer this case to the District of Colorado under Section 1404(a).

## III.    ASSIA's Indirect Infringement Claims Should Be Dismissed Under Rule 12(b)(6)

### A.    Failure To Meet Pre-Suit Knowledge Requirements for Induced or Contributory Infringement

ASSIA's indirect infringement claims should be dismissed because the Complaint fails to allege any facts demonstrating Defendants' pre-suit knowledge of the Asserted Patents. Inducement and contributory infringement require both "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). ASSIA's indirect infringement allegations as to Defendants' supposed pre-suit knowledge of the Asserted Patents and of infringement are conclusory at best. For example, as to the '996 patent, ASSIA alleges only that "Defendants have had knowledge of the '996 patent since before this Complaint was filed, or at a minimum received notice of the '996 patent upon filing of

this Complaint, and are aware of their infringement of the '996 patent." Dkt. 1, ¶49; *see also id.* ¶71 ('398 patent); ¶101 ('654 patent); ¶129 ('108 patent). Such allegations do not come close to meeting the pleading requirements under Rule 8, *Twombly*, and *Iqbal*. *See, e.g., Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307 MHS-JDL, 2014 WL 10291478, at *4 (E.D. Tex. Feb. 7, 2014) (dismissing indirect infringement claims where defendants failed to raise a plausible inference that defendants had knowledge of infringement).

As to the '108 patent, ASSIA's Complaint also alleges that Defendants had actual knowledge because the application that the '108 patent issued from was cited during the prosecution of a CCO patent. Dkt. 1, ¶115. Reference to an asserted patent during patent prosecution is insufficient to support an inference of pre-suit knowledge. *See, e.g., Spherix Inc. v. Juniper Networks, Inc.*, No. CV 14-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) (dismissing willful infringement claim for failure to plead knowledge where complaint alleged that the asserted patent was referenced during prosecution of defendant's patents); *Core Optical Techs., LLC v. Nokia Corp.*, No. SACV1902190JAKRAOX, 2020 WL 6126285 (C.D. Cal. Oct. 8, 2020) (dismissing indirect infringement claims for failure to plead knowledge where plaintiff alleged that the accused infringer owned six patents against which the asserted patent was cited as a prior art). The allegation is further insufficient, as ASSIA points to the citation of a patent *application*. *See Maxell Ltd. v. Apple Inc.*, 5:19-cv-00036-RWS, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019) ("Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent.").

ASSIA likewise failed to plausibly allege that Defendants were willfully blind. Willful blindness requires a defendant "to engage in intentional, affirmative conduct to blind itself." *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 838 (E.D. Tex. 2019) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). "A complaint that fails to identify any

affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012). ASSIA does not allege any actions taken by Defendants to avoid knowledge of the Asserted Patents. To the contrary, the October 2020 request for more information shows that Defendants were anything but willfully blind.

ASSIA does not meet the pleading standard in alleging Defendants' prior knowledge of the Asserted Patents, either actually or constructively through willful blindness.

### B.     Failure To Adequately Allege Any Infringing Act By Individual Defendants

As the Supreme Court has instructed, proper pleading under FRCP 8(a)(2) must give defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ASSIA's indirect infringement allegations do not provide adequate notice of the alleged acts of each Defendant because ASSIA improperly lumps Defendants together under the umbrella term "Charter." In doing so, ASSIA fails to allege that any single Defendant meets the requisite elements for indirect infringement. *See* Dkt. 1, ¶50 ("Charter has indirectly infringe and continues to indirectly infringe . . . .").

Grouping different corporate entities together as undifferentiated defendants in the manner ASSIA has done here fails to state an infringement claim as to any particular defendant. *See North Star Innovations, Inc. v. Toshiba Corp.*, No. CV 16-115-LPS-CJB, 2016 WL 7107230 (D. Del. Dec. 6, 2016) (granting motion to dismiss where complaint improperly lumped together three different corporate entities as "Defendants"); *Promos Techs., Inc. v. Samsung Elecs. Co.*, No. CV 18-307-RGA, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (dismissing plaintiff's indirect infringement claims where plaintiff's allegations failed to adequately identify specific infringing acts of each defendant). Thus, ASSIA's indirect infringement claims are deficient.

### C.        Failure To Allege Requisite Intent for Inducement

ASSIA also fails to plausibly allege facts showing the requisite intent for its induced infringement claims. To state a claim for induced infringement, a plaintiff must allege facts showing that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement. 35 U.S.C. § 271(b); *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (intent element requires that the defendant "[knows] that the induced acts constitute patent infringement").

In its Complaint, ASSIA baldly asserts that "Charter has induced others to infringe [the Asserted Patent] under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness . . . ." Dkt. 1, ¶50. Those allegations do not come close to showing that Defendants specifically intended third parties to infringe the Asserted Patents. "Simply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

ASSIA's Complaint repeats the same boilerplate paragraph for all four counts of alleged induced infringement, stating that Defendants engaged in inducement "through the distribution of [Charter's product] and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information related to [Charter's products] . . . ." Dkt. 1, ¶¶51, 73, 103, 133. The Complaint does include URL links to Spectrum's customer support pages and user guide videos. *See id.* But neither ASSIA's conclusory allegations nor the URL links plead Defendants' specific intent to induce customers to infringe the Asserted Patents. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) ("[F]ailing to

allege any facts identifying, . . . how the instructions direct customers to use products in an infringing matter, falls shorts of satisfying Rule 8's notice requirement.").

Courts in this District have dismissed similarly vague inducement allegations. In *Stragent, LLC v. BMW of North America, LLC*, the plaintiff "only allege[d] generic statements that the defendants provide customers with infringing devices along with instructions" and thus "faile[d] to allege how the instructions direct customers to use those products in an infringing manner." No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. 6:16-CV-00446-RWS, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017). Similarly, in *American Vehicular Sciences LLC v. Mercedes-Benz U.S. International, Inc.*, the court dismissed plaintiff's complaint for lack of "sufficient facts alleging a direct infringer and plausibly showing that [the defendant] specifically intended a third party to commit acts that [defendant] knew constituted infringement." No. 6:13-cv-307, 2014 WL 10291478, at *3 (E.D. Tex. Feb 7, 2014; *see also Core Wireless Licensing*, 2015 WL 4910427, at *4 ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

ASSIA's failure to allege factual support for its assertions of specific intent provides yet another basis for dismissing ASSIA's inducement claims.

### D. Failure to Allege "No Substantial Non-infringing Uses" For Contributory Infringement

ASSIA does not adequately plead no substantial non-infringing uses of the allegedly infringing product components. Contributory infringement requires a showing that the allegedly infringing component "has no substantial noninfringing uses." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

ASSIA's Complaint alleges that the Accused Products/Services are "not a staple article of commerce suitable for substantial non-infringing use." Dkt. 1, ¶¶53, 74, 105, 133. Such conclusory allegations are insufficient. *Artrip v. Ball Corporation*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a contributory infringement claim lacking "facts to suggest that the [accused product defendant] supplied had no substantial noninfringing use," only alleging that the accused product was "not a 'staple article' and [was] not suitable for substantial noninfringing use"); *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13-cv-307 MHS-JDL, 2014 WL 10291478 (E.D. Tex. Feb. 7, 2014) (dismissing claim of contributory infringement where the complaint was devoid of factual allegations for the court to plausibly infer that the components of the products being sold had no substantial non-infringing uses). Accordingly, ASSIA's contributory infringement claims should be dismissed.

## IV.     ASSIA's Willful Infringement Claims Should Be Dismissed Under Rule 12(b)(6)

Willful infringement under 35 U.S.C. § 284 requires two essential elements: (1) knowledge of the patent and (2) culpable conduct. First, a plaintiff must sufficiently allege that defendant had knowledge of the asserted patent. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016); *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-00097-JRG, 2021 WL 2483155, at *4 (E.D. Tex. June 2, 2021) ("Knowledge of the asserted patents is a prerequisite."). Second, willfulness is reserved for those "egregious cases of misconduct beyond typical infringement," such as "[t]he sort of conduct [that] has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc.*, 579 U.S. at 103-104, 110. ASSIA's Complaint fails to plausibly allege that Defendants had prior knowledge of the Asserted Patents or that Defendants' conduct was culpable.

### A.    Failure To Allege Defendants' Pre-Suit Knowledge Of The Asserted Patents

Without knowledge of the Asserted Patents, there can be no willful infringement. *See Halo Elecs., Inc.*, 579 U.S. at 105 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). Here, ASSIA alleges that Defendants had prior knowledge of the Asserted Patents due to "past dealings and interactions and communications between ASSIA and Charter." Dkt. 1, ¶54, 75, 106, 143. To establish Defendants' pre-suit knowledge, ASSIA relies on an alleged November 2019 letter purporting to inform CCI that it "was benefitting from the use of ASSIA's patented technology in the products and services that Charter provides to its customers[.]" Dkt. 1, ¶54. Defendants are not aware of any such letter.

ASSIA's August 19, 2020 letter fails to raise an inference that Defendants had pre-suit knowledge of the Asserted Patents. Boglioli Decl., Ex. A. The August 2020 letter did not specify which patents were included in ASSIA's "patent portfolio," attach a list of those patents, or describe ASSIA's "patented technology" in sufficient detail to put Defendants on notice of any specific patent. *Id*. at 2. Devoid of such information, the letter does not support ASSIA's conclusory allegation that Defendants had knowledge of the Asserted Patents. *See Diamond Grading Techs. Inc. v. Am. Gem. Soc'y*, No. 2:14-CV-1161-RWS-RSP, 2016 WL 3902482, at *1 (E.D. Tex. Mar. 30, 2016) ("[T]he complaint must adequately allege factual circumstances in which the patents-in-suit [are] called to the attention of the defendants."). In fact, ASSIA's ignored the October 2020 responsive letter specifically requesting more information, including an identification of the specific patents that ASSIA believed Charter would be interested in licensing. Boglioli Decl., Ex. B ("I would appreciate it if ASSIA would provide Charter the following information: (1) the patents [ASSIA] believes may be of interest to Charter . . . .").

### B.    Failure To Demonstrate Culpable Conduct

Even if Defendants had prior knowledge of the Asserted Patents (they did not), that alone

would be insufficient to establish a willful infringement claim. *See Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021) (dismissing willful infringement claims for failure to allege culpable conduct despite adequately alleging knowledge). Indeed, "[t]he sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc.*, 579 U.S. at 103-04. ASSIA fails to allege any facts that support an inference of such culpable conduct.

For each of the Asserted Patents, ASSIA's sole willfulness allegation is nothing more than a "[t]hreadbare recital[] of the elements" of willful infringement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, in alleging "Charter's infringement of the '996 patent is willful and egregious," ASSIA offers no supporting evidence of culpable conduct. Dkt. 1, ¶54; *see also id*. ¶¶75-76 ('398 patent); ¶¶106-07 ('654 patent); ¶¶134-35 ('108 patent). In *Fractus*, this Court dismissed a willfulness claim for failure to allege culpable conduct, despite finding that the complaint adequately pled knowledge. No. 2:20-CV-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021). Like in *Fractus*, ASSIA's Complaint fails to allege "any culpable conduct or any set of facts supporting an inference of culpable conduct." *Id.* at *4. The Court should therefore dismiss ASSIA's willful infringement claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court (1) dismiss ASSIA's Complaint for improper venue under Rule 12(b)(3) or, in the alternative, transfer this case to the District of Colorado under 28 U.S.C. § 1404(a), and (2) dismiss ASSIA's indirect and willful infringement claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

DATED: April 29, 2024                    Respectfully submitted,

                                         */s/ David Eiseman*
                                         _____
                                         David Eiseman
                                         davideiseman@quinnemanuel.com
                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                         50 California Street, 22nd Floor
                                         San Francisco, California 94111-4788
                                         Telephone:  (415) 875-6600
                                         Fax:  (415) 875-6700

                                         Deepa Acharya
                                         deepaacharya@quinnemanuel.com
                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                         1300 I Street NW, Suite 900
                                         Washington, D.C. 20005
                                         Telephone:  (202) 538-8000
                                         Fax:  (202) 538-8000

                                         Deron R. Dacus
                                         State Bar No. 00790553
                                         ddacus@dacusfirm.com
                                         Dacus Law Firm
                                         821 ESE Loop 323, Suite 430
                                         Tyler, TX 75701
                                         Telephone:  (903) 705-1117
                                         Fax:  (903) 581-2543

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties personally conferred by telephone on April 22, 2024

regarding Defendants' intent to file a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

_/s/ David Eiseman_
David Eiseman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing documents has been

served on all counsel of record via email and the Court's ECF system on April 29, 2024

_/s/ David Eiseman_
David Eiseman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(A), I hereby certify that a Motion for Leave to Seal
the foregoing document has been filed.

_/s/ David Eiseman_
David Eiseman