**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:24-cv-00029-JRG-RSP |
| AT&T ENTERPRISES, LLC, ET AL. | § § | JURY TRIAL DEMANDED |
| Defendants. | § § § § | |
| | § | |

## DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIMS

AT&T Enterprises, LLC,[1] AT&T Mobility LLC, AT&T Mobility II LLC and AT&T Services Inc (collectively "AT&T" or "Defendants") file this Answer to the Complaint for Patent Infringement ("Complaint") filed by Adaptive Spectrum and Signal Alignment, Inc. ("Plaintiff" or "ASSIA").[2]   Except as hereinafter specifically admitted, qualified, or affirmatively alleged, AT&T denies each and every allegation, matter, or thing contained in the Complaint. Any factual allegation admitted below is admitted only as to the specific admitted facts, and not as to any purported conclusions, characterizations, or implications that might follow from the admitted facts.

---

[1] AT&T Corp. has undergone a corporate transaction and has merged with and into AT&T Enterprises, Inc., which subsequently converted into AT&T Enterprises, LLC.

[2] AT&T Inc. and AT&T Communications, LLC (k/n/a AT&T Ventures, LLC) were also named defendants in this case. ASSIA voluntarily dismissed its claims against AT&T Inc. and AT&T Communications, LLC and the Court granted its voluntary Dismissal. Dkt. No. 33. As such, as used herein, the terms "AT&T" and "Defendants" do not include AT&T Inc. and AT&T Communications, LLC. For the sake of clarity, AT&T Inc. and AT&T Communications, LLC deny that they have engaged in any acts of infringement.

1

## THE PARTIES[3]

1.      AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 1 and therefore denies the same.

2.      AT&T admits that AT&T Inc. is a Delaware corporation having a principal place of business at 208 South Akard Street, Dallas, Texas 75202. AT&T admits that AT&T Inc. may be served through its registered agent for service, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201. Except as expressly admitted, denied.

3.      AT&T admits that AT&T Corp.[4] is a New York corporation having a principal place of business at One AT&T Way, Bedminster, New Jersey 07921. AT&T admits that AT&T Corp. may be served through its registered agent for service, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201. AT&T admits that AT&T Inc. is the direct or indirect parent corporation of AT&T Corp. Except as expressly admitted, denied.

4.      AT&T admits that AT&T Communications LLC is now known as AT&T Ventures, LLC and is a Delaware limited-liability corporation having a principal place of business at 208 South Akard Street, Dallas, Texas 75202. AT&T admits that AT&T Ventures, LLC may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. AT&T admits that AT&T Inc. is the direct or indirect parent corporation of AT&T Communications LLC. Except as expressly admitted, denied.

5.      AT&T admits that AT&T Mobility LLC is a Delaware corporation having a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319. AT&T

---

[3] Headings and subheadings are copied from the Complaint for ease of reference only. These headings and subheadings do not require any response and do not constitute an admission or denial of any purported fact or allegation. To the extent a response is required to any allegation in the Complaint's headings or subheadings, AT&T denies those allegations.

[4] AT&T Corp. has undergone a corporate transaction and has merged with and into AT&T Enterprises, Inc., which subsequently converted into AT&T Enterprises, LLC.

2

Mobility admits that it may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. AT&T admits that AT&T Inc. is the direct or indirect parent corporation of AT&T Mobility LLC. Except as expressly admitted, denied.

6.      AT&T admits that AT&T Mobility II LLC is a Delaware corporation having a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319. AT&T Mobility II admits that it may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. AT&T admits that AT&T Inc. is the direct or indirect parent corporation of AT&T Mobility II LLC. Except as expressly admitted, denied.

7.      AT&T admits that AT&T Services Inc. is a Delaware corporation having a principal place of business at 208 South Akard Street, Dallas, Texas 75202. AT&T Services admits that it may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. AT&T admits that AT&T Inc. is the direct or indirect parent corporation of AT&T Services Inc. Except as expressly admitted, denied.

**JURISDICTION AND VENUE**

8.      AT&T admits that this action purports to arise under Title 35 of the United States Code § 101 et seq.

9.      AT&T admits that ASSIA's complaint purports to state claims over which the Court would have subject matter jurisdiction generally, but denies that ASSIA is entitled to any relief.  Except as expressly admitted, denied.

10.      Denied.

3

███████████████████ AT&T further denies that venue properly lies in this district for AT&T Inc. or AT&T Communications LLC (n/k/a AT&T Ventures, LLC).

11.    AT&T Services does not contest personal jurisdiction for purposes of this action only. AT&T Services has a principal place of business located within the State of Texas. Except as expressly admitted, denied.

12.    Denied.

13.    AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. Except as expressly admitted, denied.

14.    AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. AT&T is unable to fully respond to this paragraph as it contains allegations regarding numerous entities without specifying the entity to which it refers.  Except as expressly admitted, denied.

15.    AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. Except as expressly admitted, denied.

16.    AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. AT&T is unable to fully respond to this paragraph as it contains allegations regarding numerous entities without specifying the entity to which it refers.  Except as expressly admitted, denied.

17.     AT&T is unable to respond to this paragraph as it contains allegations regarding numerous entities without specifying the entity to which it refers. On that basis, AT&T denies this paragraph.

18.     Denied.

19.     Denied.

## THE ASSERTED PATENTS

20.     AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 20 and therefore denies the same.

### I.    The '669 Patent

21.     AT&T admits that Exhibit A to the Complaint is the '669 patent, which is entitled "Adaptive FEC Codeword Management," and which indicates on its face that it issued on September 23, 2008. Except as expressly admitted, denied.

22.     AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 22 and therefore denies the same.

23.     Denied.

### II.    The '458 Patent

24.     AT&T admits that Exhibit B to the Complaint is the '458 patent, which is entitled "FEXT Determination System," and which indicates on its face that it issued on September 22, 2009. Except as expressly admitted, denied.

25.     AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 25 and therefore denies the same.

26.     Denied.

### III.    The '122 Patent

27.    AT&T admits that Exhibit C to the Complaint is the '122 patent, which is entitled "DSL System Training," and which indicates on its face that it issued on August 2, 2011. Except as expressly admitted, denied.

28.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 28 and therefore denies the same.

29.    Denied.

**IV.    The '631 Patent**

30.    AT&T admits that Exhibit D to the Complaint is the '631 patent, which is entitled "Management System and Methods of Managing Time-Division Duplex (TDD) Transmission Over Copper," and which indicates on its face that it issued on April 24, 2018. Except as expressly admitted, denied.

31.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 31 and therefore denies the same.

32.    Denied.

33.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 33 and therefore denies the same.

**FACTUAL ALLEGATIONS**

34.    AT&T admits that the Patents-in-Suit purport to related to "DSL and other wireline technology, including the utilization of existing DSL systems and telephone copper wire lines." Except as expressly admitted, denied.

35.    AT&T admits that DSL specifications may be used in telecommunications networks. The remaining allegations in this paragraph are too vague and general to be understood with sufficient specificity, and on that basis AT&T denies them.

36.     AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. The remaining allegations in this paragraph are too vague and general to be understood with sufficient specificity, and on that basis AT&T denies them. Except as expressly admitted, denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     AT&T admits that the '669 patent, '458 patent, '122 patent, and '631 patent may be accessed online through the United States Patent Office. Except as expressly admitted, denied.

41.     AT&T is unable to respond to this paragraph as it contains allegations regarding numerous entities without specifying the entity to which it refers. On that basis, AT&T denies this paragraph.

42.     Denied.

**ALLEGATIONS OF PATENT INFRINGEMENT**

43.     AT&T repeats its responses to each preceding paragraph as if fully set forth herein.

44.     Denied.

45.     Denied.

46.     AT&T is unable to respond to this paragraph as it contains allegations regarding numerous entities without specifying the entity to which it refers. On that basis, AT&T denies this paragraph.

47.     Denied.

48.     Denied.

49.     Denied.

7

50.     Denied.

51.     Denied.

52.     AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. Except as expressly admitted, denied.

53.     Denied.

54.     Denied.

55.     AT&T admits that ASSIA purports to identify information that is displayed on a website, which the website speaks for itself. To the extent that ASSIA has mischaracterized the content of the website, AT&T denies the same. Except as expressly admitted, denied.

56.     The allegations in this paragraph are too vague and general to be understood with sufficient specificity, and on that basis AT&T denies them.

57.     Denied.

58.     AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 58 and therefore denies the same.

59.     AT&T received a letter from the purported General Counsel of ASSIA on October 23, 2023, wherein the letter recited, in part, that "ASSIA possesses a patent portfolio." Except as expressly admitted, denied.

60.     AT&T received a letter from the purported General Counsel of ASSIA on October 23, 2023, wherein the letter recited, in part, ASSIA's allegation that "ASSIA holds patents that are essential to and/or beneficial for use with DSL-related standards such as ITU-T ADSL2 (G.992.3), VDSL2 (G.993.2), G.vector (G.993.5), G.inp (G.998.4), G.ploam (G.997.1), G.fast (G.9701), G.mgfast (G.9711), and G.hn (G.9960, G.9961) standards." Except as expressly admitted, denied.

8

61.    AT&T received a letter from the purported General Counsel of ASSIA on October 23, 2023, wherein the letter recited, in part, that "ASSIA seeks to engage in open and amicable licensing discussions, which will likely necessitate the exchange of confidential information from both sides. To that end, ASSIA proposes the attached non-disclosure and standstill agreement to facilitate productive discussions." Except as expressly admitted, denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    AT&T denies ASSIA's averments of infringement.

## COUNT I

71.    AT&T repeats its responses to each preceding paragraph as if fully set forth herein.

72.    AT&T admits the '669 patent, which is entitled "Adaptive FEC Codeword Management," indicates on its face that it issued on September 23, 2008 and that the inventor is identified as John M. Cioffi. Except as expressly admitted, denied.

73.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 73 and therefore denies the same.

74.    Denied.

75.    Denied.

76.    AT&T denies ASSIA's averments of infringement.

77.    AT&T admits that claim 14 of the '669 patent recites, in part: "A method of adjusting Forward Error Correcting (FEC) coding in a Digital Subscriber Line (DSL) modem in which data is transmitted between a transmitter and a receiver on a channel." Except as expressly admitted, denied.

78.    Denied.

79.    Denied.

80.    Denied.

81.    AT&T admits that claim 14 of the '669 patent recites, in part: "(a) selecting a Codeword Composition Ratio (CCR) representing a relation between payload and parity bytes in an FEC coding scheme." Except as expressly admitted, denied.

82.    Denied.

83.    Denied.

84.    AT&T admits that claim 14 of the '669 patent recites, in part: "(b) transmitting a control signal for transmitting data from the DSL modem via the channel the control signal specifying the CCR and the FEC coding scheme." Except as expressly admitted, denied.

85.    Denied.

86.    Denied.

87.    AT&T admits that claim 14 of the '669 patent recites, in part: "(c) repeatedly acquiring Measured transmission Error Values (MEVs) representing impulse noise events detected on the channel, the MEVs acquired after training and initializations on the DSL modem; (d) analyzing the acquired MEVs relative to a Target transmission Error Value (TEV); and (e) adjusting the CCR when the MEV differs sufficiently from the TEV." Except as expressly admitted, denied.

88.   Denied.

89.   Denied.

90.   Denied.

91.   Denied.

92.   Denied.

93.   Denied.

94.   Denied.

95.   Denied.

96.   Denied.

97.   Denied.

## COUNT II

98.   AT&T repeats its responses to each preceding paragraph as if fully set forth herein.

99.   AT&T admits the '458 patent, entitled "FEXT Determination System," indicates on its face that it issued on September 23, 2009 and that the inventor is identified as John M. Cioffi. Except as expressly admitted, denied.

100.   AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 100 and therefore denies the same.

101.   Denied.

102.   Denied.

103.   AT&T denies ASSIA's averments of infringement.

104.   AT&T admits that claim 1 of the '458 patent recites, in part: "1. A method of evaluating operational characteristics of a multi-line, vectored Digital Subscriber Line (DSL) system having a plurality of crosstalking lines in a common communication channel (channel)." Except as expressly admitted, denied.

11

105.    Denied.

106.    Denied.

107.    AT&T admits that claim 1 of the '458 patent recites, in part: "exciting the plurality of crosstalking lines in the channel with a known sequence of input symbols applied to the crosstalking lines; acquiring output data from a primary line among the plurality of lines in the channel, the output data comprising the known sequence of input symbols after having been affected by crosstalk coupling among the plurality of crosstalking lines in the channel." Except as expressly admitted, denied.

108.    Denied.

109.    Denied.

110.    AT&T admits that claim 1 of the '458 patent recites, in part: "ordering the crosstalking lines based on a comparison between the known sequence of input symbols used to excite the crosstalking lines and the output data acquired from the primary line." Except as expressly admitted, denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    AT&T admits that claim 1 of the '458 patent recites, in part: "generating a data quantity representative of the crosstalk coupling between the primary line and each of the crosstalking lines based on the ordering of the crosstalking lines." Except as expressly admitted, denied.

115.    Denied.

116.    Denied.

117.    AT&T admits that claim 1 of the '458 patent recites, in part: "sending instructions to one or more modems communicatively interfaced with the plurality of crosstalking lines in the channel based on the data quantity generated." Except as expressly admitted, denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

## COUNT III

128.    AT&T repeats its responses to each preceding paragraph as if fully set forth herein.

129.    AT&T admits the '122 patent, entitled "DSL system training," indicates on its face that it issued on August 2, 2011 and that the inventors are identified as John M. Cioffi, Wonjong Rhee, Bin Lee, and Georgios Ginis. Except as expressly admitted, denied.

130.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 130 and therefore denies the same.

131.    Denied.

132.    Denied.

133.    AT&T denies ASSIA's averments of infringement.

13

134.    AT&T admits that claim 14 of the '122 patent recites, in part: "A controller comprising: a data collection unit configured to collect operational data from a new DSL line set and an already-operating DSL line set." Except as expressly admitted, denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    AT&T admits that claim 14 of the '122 patent recites, in part: "an analysis unit coupled to the collection unit, wherein the analysis unit is configured to: analyze the collected operational data; determine an operational configuration for at least one DSL line in the new DSL line set that will allow the new DSL line set to join the already-operating DSL line set without disrupting the already-operating DSL line set." Except as expressly admitted, denied.

140.    Denied.

141.    AT&T admits that claim 14 of the '122 patent recites, in part: "evaluate data received by the new DSL line set; and evaluate data received by the already-operating DSL line set." Except as expressly admitted, denied.

142.    Denied.

143.    Denied.

144.    AT&T admits that claim 14 of the '122 patent recites, in part: "a control signal generator coupled to the analysis unit, wherein the control signal generator is configured to send control signals to the new DSL line set and to the already-operating DSL line set, further wherein the control signals comprise signals controlling operation of at least one of the following: the new DSL line set; or the already-operating DSL line set; and wherein the controller is configured to

14

evaluate whether crosstalk from the new DSL line set affects the already-operating DSL line set." Except as expressly admitted, denied.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

## COUNT IV

156.    AT&T repeats its responses to each preceding paragraph as if fully set forth herein.

157.    AT&T admits the '631 patent, entitled "Management system and methods of managing time-division duplex (TDD) transmission over copper," indicates on its face that it issued on April 24, 2018 and that the inventors are identified as Kenneth Kerpez, George Ginis, Marc Goldburg, Ardavan Maleki Tehrani. Except as expressly admitted, denied.

158.    AT&T lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 130 and therefore denies the same.

159.    Denied.

160.    Denied.

161.    AT&T denies ASSIA's averments of infringement.

15

162.    AT&T admits that claim 1 of the '631 patent recites, in part: "A method in a data communications system for managing multiple time division physical channels that are subject to crosstalk." Except as expressly admitted, denied.

163.    Denied.

164.    AT&T admits that claim 1 of the '631 patent recites, in part: "scheduling upstream time slots for upstream transmission in a first physical channel; and scheduling downstream time slots for downstream transmission in a second physical channel." Except as expressly admitted, denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    AT&T admits that claim 1 of the '631 patent recites, in part: "wherein transmission in the upstream time slots is substantially not simultaneous with transmission in the downstream time slots." Except as expressly admitted, denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

## AT&T DENIES PLAINTIFF IS ENTITLED TO ITS PRAYER FOR RELIEF

AT&T denies the allegations contained in Plaintiff's Prayer for Relief, and AT&T further denies that Plaintiff is entitled to any relief whatsoever, including any of the relief sought in paragraphs A through H of its Prayer for Relief. Plaintiff's Prayer for Relief should, therefore, be denied in its entirety and with prejudice, and Plaintiff should take nothing.

## [PLAINTIFF'S] DEMAND FOR JURY TRIAL

AT&T admits that the Complaint sets forth a demand for a jury trial.

## AT&T'S DEFENSES

Upon information and belief, and subject to its responses above, AT&T asserts the following defenses in response to the allegations of the Complaint, without admitting or acknowledging that AT&T bears the burden of proof as to any of them or that any must be pleaded as defenses. Regardless of how such defenses are listed herein, AT&T undertakes the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law. AT&T expressly reserves the right to amend or raise additional defenses pursuant to any docket control order or as additional information becomes available through further investigation and discovery.

AT&T incorporates by reference the factual background recited infra in paragraphs 1-42.

## FIRST DEFENSE

### (Non-Infringement)

AT&T does not infringe and has not infringed the Patents-in-Suit directly, indirectly, literally or under the doctrine of equivalents, or in any other manner, and is not liable for infringement of any valid and enforceable claim of the Patents-in-Suit.

## SECOND DEFENSE

### (Limitation on Equivalents / Ensnarement)

To the extent that Plaintiff asserts infringement of any Patents-in-Suit under the doctrine of equivalents, such doctrine of barred by prosecution history estoppel, the *Festo* bar, ensnarement, and/or claim vitiation.

## THIRD DEFENSE

### (Invalidity)

The claims of the Patents-in-Suit are invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. For example, one or more claims of the Patents-in-Suit are invalid because they claim patent-ineligible subject matter.

## FOURTH DEFENSE

### (Statutory Limit on Damages)

Plaintiff's claim for damages, equitable relief, and/or costs is statutorily limited by 35 U.S.C. §§ 252, 286, 287, and/or 288.

## FIFTH DEFENSE

### (No Willful Infringement)

Plaintiff is not entitled to enhanced or increased damages for willful infringement because AT&T has not engaged in any conduct that meets the applicable standard for willful infringement.

## SIXTH DEFENSE

### (No Exceptional Case)

Plaintiff cannot prove that this is an exceptional case justifying award of attorney fees against AT&T pursuant to 35 U.S.C. § 285.

## SEVENTH DEFENSE

### (Waiver, Equitable Estoppel, Acquiescence, Unclean Hands)

Plaintiff's claims are barred, in whole or in part, or their remedies limited, by the doctrines

of waiver, implied waiver, equitable estoppel, acquiescence, and/or unclean hands.

## EIGHT DEFENSE

### (Prosecution History Estoppel)

Plaintiff's claims for relief are barred in whole or in part by prosecution history estoppel and/or prosecution history disclaimer based on amendments, statements, admissions, omissions, representations, disclaimers, and/or disavowals made by the applications for the Patents-in-Suit.

## NINTH DEFENSE

### (Statutory Limitation)

To the extent certain equipment accused of infringing the Patents-in-Suit are used by and/or manufactured for the United States Government and/or public good, Plaintiff's claims involving AT&T may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## TENTH DEFENSE

### (License, Implied License, Exhaustion)

Plaintiff's claims for patent infringement are precluded in whole or in part (i) to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to AT&T by any entity or entities having express or implied licenses or covenant not to sue or assert to the Patents-in-Suit and/or (ii) under the doctrine of patent exhaustion. Additionally, Plaintiff's claims for patent infringement are precluded in whole or in part by any direct licenses or agreements/covenants not to sue that pertain to AT&T, or any direct or indirect licenses granting AT&T ownership or any rights to the Patents-in-Suit.

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████

### ELEVENTH DEFENSE

### (No Injunctive Relief)

Plaintiff's claims for relief are barred in whole or in part because ASSIA is not entitled to injunctive relief. Any alleged injury to ASSIA is not immediate or irreparable and ASSIA has an adequate remedy at law.

### TWELFTH DEFENSE

### (Standing/Ownership)

Because Plaintiff was not the sole and total owner of all substantial rights in any of the Patents-in-Suit as of the filing date of the Complaint, Plaintiff lacks standing to bring one or more claims in this lawsuit. Specifically, AT&T is a joint owner of at least the '458 and '122 patents. Because AT&T has not joined the litigation by asserting infringement of the '458 and '122 patents, ASSIA has no standing to assert infringement of the '458 and '122 patents.

### THIRTEENTH DEFENSE

### (Contractual Limitation on Remedies – F/RAND Limitation)

Plaintiff's claims for relief are barred or limited, in whole or in part, by its unfulfilled obligations to license the Asserted Patents on reasonable, and non-discriminatory (or fair, reasonable, and non-discriminatory) terms. ASSIA has submitted declarations to various standards at issue in this case, declaring that it holds patents that are essential to those standards. Those declarations are attached as Exhibits C–H. ASSIA owns patents with claims that it contends are essential to the G.inp (G.998.4); G.hn (G.9960, G.9961); G.vector (G.993.5); and

20

███████████████████████

G.fast (G.9701) specifications. Specifically, ASSIA contends that the '669 Patent is essential to the accused G.inp (G.998.4) and G.hn (G.9960, G.9961) specifications; the '631 Patent is essential to the accused G.fast (G.9701) specification; and the '122 Patent is essential to the accused G.vector (G.993.5) and G.fast (G.9701) specifications. Moreover, ASSIA's theory of infringement presented in its initial infringement contentions appears to be that the '458 Patent is essential to the accused G.vector (G.993.5) and G.fast (G.9701) specifications. Therefore, any damages awarded in this litigation are confined or restricted to those in accordance with ASSIA's F/RAND commitment and must be on reasonable and non-discriminatory terms.

## **COUNTERCLAIMS**

Without admitting any of the allegations of the Complaint other than those expressly admitted herein, and without prejudice to the right to plead any additional counterclaims as the facts of the matter warrant, pursuant to Rule 13 of the Federal Rules of Civil Procedure, AT&T Services Inc. ("AT&T" or "Counterclaim-Plaintiff") alleges as follows and asserts the following Counterclaims against Counterclaim-Defendant Adaptive Spectrum and Signal Alignment, Inc. ("ASSIA" or "Counterclaim-Defendant").

████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

███████████████

**THE PARTIES**

1.    AT&T Services Inc. is a Delaware corporation having a principal place of business at 208 South Akard Street, Dallas, Texas 75202.

2.    For purposes of determining diversity jurisdiction, AT&T Services Inc. is a citizen of (1) Texas and (2) Delaware.

3.    Adaptive Spectrum and Signal Alignment, Inc. is a California corporation with its principal place of business located at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065.

**ASSIA'S F/RAND OBLIGATIONS**

4.    The International Telecommunications Union (ITU) is a specifications development organization (SDO) that develops specifications for the telecommunications industry.

5.    The ITU promulgated an Intellectual Property Rights (IPR) Policy, the construction, validity, and performance of which is governed by Swiss law. The ITU IPR policy is attached hereto as Exhibit B.

6.    The "Common Patent Policy for ITU-T/ITU0R/ISO/IEC" includes three different situations that may arise, including the below:

> 2.1 The patent holder is willing to negotiate licences free of charge with other parties on a non-discriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

> 2.2 The patent holder is willing to negotiate licences with other parties on a nondiscriminatory basis on reasonable terms and conditions. Such negotiations are left to the parties concerned and are performed outside ITU-T/ITU-R/ISO/IEC.

> 2.3 The patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2; in such case, the Recommendation | Deliverable shall not include provisions depending on the patent.

7.     ASSIA has submitted declarations to various standards at issue in this case, declaring that it holds patents that are essential to those standards. Those declarations are attached as Exhibits C–H.

8.     In each of Exhibits C–H, ASSIA selected the option listed under section 2.2. ASSIA has therefore irrevocably committed that it is willing to negotiate licenses with other parties on a nondiscriminatory basis and on reasonable terms and conditions.

9.     The F/RAND commitment of ASSIA is irrevocable, runs with, and continues to encumber any essential patent claims of ASSIA.

## ASSIA'S F/RAND VIOLATIONS

10.     ASSIA owns patents with claims that it contends are essential to the G.inp (G.998.4); G.hn (G.9960, G.9961); G.vector (G.993.5); and G.fast (G.9701) standards. Specifically, ASSIA contends that the '669 Patent is essential to the accused G.inp (G.998.4) and G.hn (G.9960, G.9961) standards; the '631 Patent is essential to the accused G.fast (G.9701) standard; and the '122 Patent is essential to the accused G.vector (G.993.5) and G.fast (G.9701) standards. *See* Exhibit I. Moreover, ASSIA's theory of infringement presented in its initial infringement contentions appears to be that the '458 Patent is essential to the accused G.vector (G.993.5) and G.fast (G.9701) specifications. Exhibit J.

11.     Additionally, in correspondence dated October 23, 2023, ASSIA told AT&T that "ASSIA holds patents that are essential to and/or beneficial for use with DSL-related standards such as ITU-T ADSL2 (G.992.3), VDSL2 (G.993.2), G.Vector (G.993.5), G.inp (G.998.4), G.ploam (G.997.1), G.Fast (G.9701), and G.hn (G.9960, G.9961) standards." Exhibit K.

12.     ASSIA maintains a F/RAND commitment to each of those patents that requires ASSIA to negotiate licenses with other parties on a nondiscriminatory basis and on reasonable terms and conditions.

23

13.     ASSIA has violated its F/RAND commitment by failing to offer and/or negotiate towards a license with AT&T on fair, reasonable, and non-discriminatory terms.

14.     Despite initiating negotiations for a license with AT&T, ASSIA has failed to negotiate in good faith. In its initial letter to AT&T, ASSIA failed to identify any actual patents that it believed AT&T infringed (including any of the patents asserted in this case), and also did not include a specific charge of infringement identifying any AT&T products or services. Exhibit K. In fact, at no point before filing a lawsuit did ASSIA ever identify any specific patents or specific products or services that allegedly infringed such patents.

15.     ASSIA has already licensed its patent portfolio, including the Asserted Patents, to one or more of Counterclaim-Plaintiffs' competitors and/or suppliers in the telecommunications industry.

16.     ASSIA has failed to make a licensing offer (F/RAND or otherwise) to AT&T that would be considered non-discriminatory in light of those licenses.

17.     In fact, ASSIA did not make a licensing offer (F/RAND or otherwise) to AT&T at any time prior to the filing of the lawsuit.

18.     ASSIA has not made a licensing offer (F/RAND or otherwise) to AT&T since filing the lawsuit.

19.     By failing to ever make an offer to AT&T, ASSIA failed to conduct its negotiations in good faith.

20.     By failing to ever make an offer to AT&T, ASSIA has violated its F/RAND obligations by not being "willing to negotiate licences with other parties on a nondiscriminatory basis on reasonable terms and conditions."

24

## ASSIA'S CONTRACTUAL OBLIGATIONS AND VIOLATIONS

27

██████████████████████████

███████████████████████████████

███████████

██  ███████████████████████

## JURISDICTION AND VENUE

40.    These counterclaims arise under the patent laws of the United States, Title 35, United States Code. This Court has subject matter jurisdiction under 35 U.S.C. § 271 et seq., and 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201-02.

41.    There is complete diversity between Counterclaim-Plaintiffs and Counterclaim-Defendants and the amount in controversy exceeds $75,000.

42.    In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Counterclaim-Plaintiffs' claims for breach of F/RAND as they are so related to patent claims in this action that they form part of the same case or controversy and necessarily involve substantial questions of patent law.

43.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Counterclaim-Plaintiffs' claims for breach of contract as they are so related to patent claims in this action that they form part of the same case or controversy and necessarily involve substantial questions of patent law. AT&T reserves the right to arbitrate its claims for breach of contract.

44.    This Court has personal jurisdiction over Counterclaim-Defendant. ASSIA consented to personal jurisdiction by commencing this action for patent infringement in this judicial district.

45.    ASSIA has consented to venue in this Court by bringing this action against AT&T. AT&T has filed a motion to transfer venue to the Northern District of California or, in the alternative, arbitrate where venue is appropriate. AT&T does not waive its right to arbitration or

waive its contractual agreement with ASSIA to litigate any claims in the Northern District of California.

46.    ASSIA has filed suit in this Court against AT&T for alleged infringement of one or more claims of the Asserted Patents in this action. Accordingly, there is an actual, continuing, and justiciable controversy arising under the Patent Act, 35 U.S.C. §§ 1, et seq. between ASSIA, on the one hand, and Counterclaim-Plaintiffs, on the other, concerning the alleged infringement by AT&T of the Asserted Patents.

47.    Counterclaim-Plaintiffs deny that it directly or indirectly infringes any asserted, valid, and enforceable claim of the Asserted Patents. In view of the foregoing, there exists an actual and justiciable controversy between the parties with respect to the alleged infringement of the Asserted Patents.

### First Counterclaim – Declaration of Non-Infringement of U.S. Patent No. 7,428,669

48.    Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

49.    ASSIA owns the '669 Patent.

50.    ASSIA alleges that AT&T has infringed and continues to infringe at least Claims 14-17, 19, 20, 23, and 26-29 of the '669 Patent under 35 U.S.C. § 271(a).

51.    Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '669 Patent.

52.    Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service, that practices every element of any claim of the '669 Patent, including but not limited to Claims 14-17, 19, 20, 23, and 26-29, at least because, as an example, Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service that perform, for example: (i) "[a] method of adjusting Forward Error Correcting (FEC) coding in a

Digital Subscriber Line (DSL) modem in which data is transmitted between a transmitter and a receiver on a channel, the method comprising:" (ii) "(a) selecting a Codeword Composition Ratio (CCR) representing a relation between payload and parity bytes in an FEC coding scheme;" (iii) "(b) transmitting a control signal for transmitting data from the DSL modem via the channel the control signal specifying the CCR and the FEC coding scheme;" (iv) "(c) repeatedly acquiring Measured transmission Error Values (MEVs) representing impulse noise events detected on the channel, the MEVs acquired after training and initializations on the DSL modem;" (v) "(d) analyzing the acquired MEVs relative to a Target transmission Error Value (TEV); and" (vi) "(e) adjusting the CCR when the MEV differs sufficiently from the TEV."

53.     For these and other reasons to be established through discovery, Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '669 Patent.

54.     There is an actual and justiciable controversy between ASSIA and Counterclaim-Plaintiffs arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning ASSIA's allegations that Counterclaim-Plaintiffs infringe the '669 Patent.

55.     Counterclaim-Plaintiffs are entitled to a judicial declaration that they have not and do not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any asserted, valid, and enforceable claim of the '669 Patent.

56.     Absent a declaration that Counterclaim-Plaintiffs do not infringe the '669 Patent, ASSIA will continue to wrongfully assert the '669 Patent against Counterclaim-Plaintiffs and thereby cause Counterclaim-Plaintiffs irreparable harm and injury.

**Second Counterclaim – Declaration of Non-Infringement of U.S. Patent No. 7,593,458**

57.     Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

██ ████████████████████████████████████ .

59.     ASSIA alleges that AT&T has infringed and continues to infringe at least Claims 1-2, 4-5, 7, 9-12, and 14-15 of the '458 Patent under 35 U.S.C. § 271(a).

60.     Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '458 Patent.

61.     Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service, that practices every element of any claim of the '458 Patent, including but not limited to Claims 1-2, 4-5, 7, 9-12, and 14-15, at least because, as an example, Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service that perform, for example: (i) "[a] method of evaluating operational characteristics of a multi-line, vectored Digital Subscriber Line (DSL) system having a plurality of crosstalking lines in a common communication channel (channel), the method comprising:" (ii) "(a) exciting the plurality of crosstalking lines in the channel with a known sequence of input symbols applied to the crosstalking lines;" (iii) "(b) acquiring output data from a primary line among the plurality of lines in the channel, the output data comprising the known sequence of input symbols after having been affected by crosstalk coupling among the plurality of crosstalking lines in the channel;" (iv) "(c) ordering the crosstalking lines based on a comparison between the known sequence of input symbols used to excite the crosstalking lines and the output data acquired from the primary line;" (v) "(d) generating a data quantity representative of the crosstalk coupling between the primary line and each of the crosstalking lines based on the ordering of the crosstalking lines; and" (vi) "(e) sending instructions to one or more modems communicatively interfaced with the plurality of crosstalking lines in the channel based on the data quantity generated."

62.     For these and other reasons to be established through discovery, Counterclaim-

Plaintiffs deny that they infringe any asserted, valid claim of the '458 Patent.

63.     There is an actual and justiciable controversy between ASSIA and Counterclaim-Plaintiffs arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning ASSIA's allegations that Counterclaim-Plaintiffs infringe the '458 Patent.

64.     Counterclaim-Plaintiffs are entitled to a judicial declaration that they have not and do not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any asserted, valid, and enforceable claim of the '458 Patent.

### Third Counterclaim – Declaration of Non-Infringement of U.S. Patent No. 7,991,122

65.      Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

67.     ASSIA alleges that AT&T has infringed and continues to infringe at least Claims 14-18 and 20 of the '122 Patent under 35 U.S.C. § 271(a).

68.     Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '122 Patent.

69.     Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service, that practices every element of any claim of the '122 Patent, including but not limited to Claims 14-18 and 20, at least because, as an example, Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service that perform, for example: (i) "[a] controller comprising:" (ii) "(a) a data collection unit configured to collect operational data from a new DSL line set and an already-operating DSL line set;" (iii) "an analysis unit coupled to the collection unit, wherein the analysis unit is configured to:" (iv) "analyze the collected operational data;" (v) "determine an operational configuration for at least one DSL line in the new

DSL line set that will allow the new DSL line set to join the already-operating DSL line set without disrupting the already-operating DSL line set;" (vi) "evaluate data received by the new DSL line set; and" (vii) "evaluate data received by the already-operating DSL line set; and" (viii) "a control signal generator coupled to the analysis unit, wherein the control signal generator is configured to send control signals to the new DSL line set and to the already-operating DSL line set, further wherein the control signals comprise signals controlling operation of at least one of the following:" (ix) "the new DSL line set; or" (x) "the already-operating DSL line set; and wherein the controller is configured to evaluate whether crosstalk from the new DSL line set affects the already-operating DSL line set."

70.     For these and other reasons to be established through discovery, Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '122 Patent.

71.     There is an actual and justiciable controversy between ASSIA and Counterclaim-Plaintiffs arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*, concerning ASSIA's allegations that Counterclaim-Plaintiffs infringe the '122 Patent.

72.     Counterclaim-Plaintiffs are entitled to a judicial declaration that they have not and do not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any asserted, valid, and enforceable claim of the '122 Patent.

**Fourth Counterclaim – Declaration of Non-Infringement of U.S. Patent No. 9,954,631**

73.     Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

74.     ASSIA owns the '631 Patent.

75.     ASSIA alleges that AT&T has infringed and continues to infringe at least Claims 1, 3-6, 8-9, 11-16, 22, and 33-37 of the '631 Patent under 35 U.S.C. § 271(a).

76.     Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '631 Patent.

77.     Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service, that practices every element of any claim of the '631 Patent, including but not limited to Claims 1, 3-6, 8-9, 11-16, 22, and 33-37, at least because, as an example, Counterclaim-Plaintiffs do not make, use, sell, or offer to sell any product, system, platform, or service that perform, for example: (i) "[a] method in a data communications system for managing multiple time division physical channels that are subject to crosstalk, the method comprising:" (ii) "scheduling upstream time slots for upstream transmission in a first physical channel; and" (iii) "scheduling downstream time slots for downstream transmission in a second physical channel, wherein transmission in the upstream time slots is substantially not simultaneous with transmission in the downstream time slots."

78.     For these and other reasons to be established through discovery, Counterclaim-Plaintiffs deny that they infringe any asserted, valid claim of the '631 Patent.

79.     There is an actual and justiciable controversy between ASSIA and Counterclaim-Plaintiffs arising under the Patent Act, 35 U.S.C. §§ 1, et seq., concerning ASSIA's allegations that Counterclaim-Plaintiffs infringe the '631 Patent.

80.     Counterclaim-Plaintiffs are entitled to a judicial declaration that they have not and do not infringe directly or indirectly, by inducement or by contribution, or under the doctrine of equivalents, any asserted, valid, and enforceable claim of the '631 Patent.

**Fifth Counterclaim –Breach of Contract (F/RAND Commitment)**

81.     Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

82.    ASSIA has contended that they own and/or have the right to license patent claims that are essential to the G.inp (G.998.4); G.hn (G.9960, G.9961); G.vector (G.993.5); and G.fast (G.9701) standards.

83.    ASSIA has made a contractual commitment to the ITU that it will license any essential patent claims on terms that are reasonable and non-discriminatory.

84.    Counterclaim-Plaintiffs are intended third-party beneficiaries of the F/RAND commitment and are entitled to enforce the F/RAND commitment.

85.    ASSIA has already licensed its patent portfolio, including the Asserted Patents, to one or more of Counterclaim-Plaintiffs' competitors and/or suppliers in the telecommunications industry.

86.    Parties negotiating towards a license for patents subject to the ITU F/RAND commitment are required to negotiate in good faith.

87.    Counterclaim-Defendant commenced negotiations with the Counterclaim-Plaintiff for the ostensible purpose of reaching agreement on terms and conditions for a license to any essential patent claims that Counterclaim-Defendant owned or had the right to license.

88.    After commencing negotiations, however, Counterclaim-Defendant (1) failed to conduct those negotiations in good faith in violation of the F/RAND commitment, (2) failed to license or offer to license any essential patent claims on terms that are reasonable and non-discriminatory, and (3) discriminated against AT&T by failing to offer AT&T a license rate that is substantially similar to the license rate(s) offered to one or more other firms that are similarly situated, including one or more of Counterclaim-Plaintiffs' competitors and/or suppliers in the telecommunications industry for infrastructure.

89.     Counterclaim-Defendant has failed to offer, or negotiate towards, a license to any essential patent claims that they own, or have the right to license, on F/RAND terms. No licensing offers have been made. This is a violation of the F/RAND commitment and a breach of contract.

90.     Counterclaim-Plaintiffs have suffered harm as a result of Counterclaim-Defendants breach of F/RAND. For example, Counterclaim-Plaintiffs have been unable to obtain a license from ASSIA on F/RAND terms.

91.     Counterclaim-Plaintiffs request a declaration that Counterclaim-Defendant has failed to comply with the F/RAND commitment and damages to compensate for such failure, at the very least in the form of nominal damages.

## Sixth Counterclaim – Breach of Contract

92.     Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

93.     ASSIA and AT&T entered into a series of contractual agreements that govern the Asserted Patents in this case.

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

### Seventh Counterclaim – Quiet Title to Patents-in-Suit

118.    Counterclaim-Plaintiffs reallege each preceding paragraph of their Counterclaims as though fully set forth herein.

119.    ASSIA and AT&T entered into a series of contractual agreements that govern the Asserted Patents in this case.

████    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

████    ████████████████████████████████████████████

████████████████████████████████████████████████████████

## RESERVATIONS

AT&T reserves the right to supplement and/or amend its defenses as discovery proceeds in this case.

## REQUEST FOR RELIEF

AT&T respectfully requests that this Court enter judgment as follows:

a. A judgment dismissing ASSIA's Complaint against AT&T with prejudice;

b. A judgment in favor of AT&T on all of its Defenses;

c. A judgment denying any relief whatsoever that favors ASSIA, including but not limited to injunctive relief;

d. A judgment that AT&T has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claims of the Asserted Patents;

e. Finding and declaring that ASSIA has violated its F/RAND commitment;

f. Finding and declaring that ASSIA breached its contract with AT&T;

g. Finding and declaring that AT&T is entitled to a declaration that it possesses ownership rights in the '458 and '122 patents;

h. Damages as a result of ASSIA's breach of contract (F/RAND);

i. Damages as a result of ASSIA's breach of contract (between ASSIA and AT&T);

j. A judgment that this action is exceptional within the meaning of 35 U.S.C. § 285 and that Defendants are entitled to recover their reasonable attorney's fees upon prevailing in this action;

k. An award to AT&T of its fees and expenses of litigation, including but not limited to attorneys' fees and costs;

l.   A judgment limited or barring ASSIA's ability to enforce the Asserted Patents in

     equity; and

m.   Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-

38, trial by jury on all issues so triable is requested.

Dated: January 2, 2025                    RESPECTFULLY SUBMITTED,

*/s/ M Scott Stevens*
M. Scott Stevens (NC Bar No. 37828)
Nicholas C. Marais (NC Bar No. 53533)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile:  (704) 444-1111
Email: scott.stevens@alston.com
Email: nic.marais@alston.com

Theodore Stevenson, III (TX Bar No. 19196650)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Fax:    (214) 922-3899
Email:  ted.stevenson@alston.com

David S. Frist (GA Bar No. 205611)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Phone: (404) 881-7000
Fax:    (404) 881-7777
Email:  david.frist@alston.com

Deron R. Dacus (TX Bar No. 790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Phone: (903) 705-1117
Email:  ddacus@dacusfirm.com

*Attorneys for Defendants*

███████████████████████

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties

who have appeared in this case on January 2, 2025, via the Court's CM/ECF system.

*/s/ M Scott Stevens*
M. Scott Stevens

███████████████████████

████████████████████████████

████████████████████████████

██████████

*/s/ M Scott Stevens*
M. Scott Stevens (NC Bar No. 37828)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile:  (704) 444-1111
Email: scott.stevens@alston.com