IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:24-cv-00029-JRG-RSP |
| AT&T CORP., *et al.*, | § § § | |
| *Defendants*. | § | |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Transfer Venue Based on the Parties' Contractual Forum-Selection Clause, and Alternatively, Motion to Stay Case Pending Arbitration. **Dkt. No. 87.**

AT&T argues that as part of a joint development group between Plaintiff ASSIA and AT&T, the parties agreed to a broad forum selection clause that requires the parties to handle any "claims or counterclaims" between them in the Northern District of California. *Id.* at 1. AT&T thus moves the Court to honor this forum selection clause and transfer this case to that District under 28 U.S.C. § 1404(a). Alternatively, AT&T argues that if there is any dispute about the applicability of the forum selection clause, the Court should compel arbitration to resolve the dispute pursuant to a separate provision of the parties' contracts. The Court does not find either the forum selection clause or the arbitration clause to be applicable here and thus **DENIES** the Motion in its entirety.

I.  **LEGAL STANDARDS**

   a. **Forum Selection Clause**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A case may also be transferred under § 1404(a) if

1

there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g., Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *Gen. Protecth Grp*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. *Id*. Beyond this, however, the Federal Circuit has provided little guidance. Previously, this Court has used a less than one-half and nearer to the one-quarter standard when addressing the non-frivolousness threshold regarding forum selection clauses under § 1404(a). *See Zix*, 2016 WL 7042221 at *3. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense becomes "non-frivolous." *Id*. This Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum," and that it is probably "found nearer the one-quarter marker." *Id*.

"[T]he question of enforceability is analytically distinct from the issue of interpretation: Only after the court has interpreted the contract to determine whether it is mandatory or permissive

does its enforceability come into play." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016).[1] The Fifth Circuit directs courts to follow the *Erie/Klaxon* choice of law approach when interpreting contracts. *Id.*

### b. Arbitration

When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id.* (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002)). In regard to the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second question of scope is answered "by applying the 'federal substantive law of arbitrability....'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

## II. ANALYSIS

### a. Forum Selection

AT&T relies on Amendment No. 12 of the parties' joint-development and patent license agreement to argue that a forum selection clause applies. Dkt. No. 87 at 6; Dkt. No. 87-2. Section 13(e) of that agreement provides:

> (e) Applicable Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to its conflicts of law rules. Except as provided for in Section 12 (a), *any judicial suit or action relating to any Claim or counterclaims shall be brought and prosecuted only in the U.S. District Court for the Northern District of California* when standing permits,

---

[1] The Federal Circuit "generally applies the law of the respective regional circuit on questions of procedure," unless the procedural matter arises from substantive law within its exclusive jurisdiction. *Gen. Protech Grp*, 651 F.3d at 1359. The Federal Circuit has applied regional circuit law when deciding if a forum selection clause applies when the argument is raised outside of a license defense and requires contract interpretation. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).

3

> and otherwise in the Superior Court in San Mateo County, California, and each Party shall submit to and not challenge venue and personal jurisdiction in such forum with respect to such Claims or counterclaims.

Dkt. No. 87-2 at 12 (emphasis added). AT&T argues that this language covers this patent infringement lawsuit because it says "*any* judicial suit or action relating to *any* Claim or counterclaim." Dkt. No. 87 at 8. AT&T explains that nowhere in the agreement are the terms "Claim and counterclaims" limited to less than their plain and ordinary meaning. *Id.* AT&T then points out that "Claim" is capitalized and points to its definition in the original agreement. *Id.* There the section reads:

> SBC SHALL NOTIFY ASSIA WITHIN A REASONABLE PERIOD OF TIME OF ANY CLAIM, DEMAND, NOTICE, OR LEGAL PROCEEDINGS ("CLAIM") FOR WHICH ASSIA MAY BE RESPONSIBLE UNDER THIS INDEMNITY OBLIGATION. A DELAY IN NOTICE SHALL NOT RELIEVE ASSIA OF ITS INDEMNITY OBLIGATION, EXCEPT TO THE EXTENT ASSIA CAN SHOW IT WAS MATERIALLY PREJUDICED THEREBY.

Dkt. No. 87-1 at § 10.1(e) (p.35). AT&T argues that "Claim" in the amendment should thus either have its plain meaning or mean "Any claim, demand, notice, or legal proceeding." Dkt. No. 87 at 8. AT&T maintains that under either definition the FSC applies, and this case should be transferred to the N.D. Cal. *Id.* Further, AT&T asserts that the use of "shall" makes the clause mandatory. *Id.* at 7. AT&T then argues that forum selection clauses should be enforced absent a showing by the resisting party that its enforcement would be unreasonable. *Id.* (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Finally, AT&T argues that the selection of N.D. Cal. as the exclusive venue makes sense given ASSIA's founding location and location of its only office, as well as the location of all of ASSIA's executives. *Id.* at 8–9.

AT&T also argues that is has raised a non-frivolous license defense that should be adjudicated by N.D. Cal. *Id.* at 9–10. AT&T again relies on Amendment 12 which grants AT&T a

license to the '669 patent,[2] and to inventions that "could have been included as a claim in any of the Licensed Patents." *Id.* at 9; Dkt. No. 87-2 § 1. AT&T argues that at this stage of the case, it does not need to prove all the particulars of its license defense but only needs to article a non-frivolous defense to justify transfer. Dkt. No. 87 at 9–10.

Plaintiff ASSIA responds that AT&T has not met its burden to justify venue transfer. Dkt. No. 93 at 4. ASSIA argues that AT&T's interpretation of the Amendment would require ASSIA to "file all litigation against anyone, in perpetuity, in federal court regardless of its relationship to the Stanford Sublicense." *Id.* at 5. According to ASSIA, that interpretation is contrary to California law (the choice-of-law of the provision at issue). *Id.* According to ASSIA, "under California law, a venue provision only applies to claims related to the agreement at issue where the provision is related to the subject matter of the contract." *Id.* at 6. ASSIA points to the beginning of the at-issue Section 13(e) which reads "this agreement." ASSIA also argues that the Amendment and thus the venue provision expired. *Id.* at 7 (citing Dkt. No. 93-2 at § 10(c)).

ASSIA also argues that AT&T's license-based venue arguments are frivolous. *Id.* ASSIA argues that the Agreement only licensed Stanford-owned patents and not ASSIA-owned patents. *Id.* at 8. In support, ASSIA points to the "Associated Rights" section of the agreement which reads:

> Notwithstanding the above, the term "Associated Rights" does not include : 1. any intellectual property right owned by the Board of Trustees for the Leland Stanford Junior University ("Stanford") that was not expressly granted to Licensor under the June 3, 2008 Amended and Restated Exclusive (Equity) Agreement between Stanford and Licensor ("Stanford License"); and 2. any intellectual property right owned or developed by Licensor.[3]

---

[2] The parties have agreed to dismiss all claims and counterclaims related to the '669 patent and represent that arguments relating to the specific license to the '669 patent are no longer relevant to Defendants' motion. Dkt. No. 113. This agreement does not affect AT&T's argument about licensure arising out of Amendment 12.
[3] ASSIA is the Licensor here.

Dkt. No. 93-2 at Exhibit E, 1–2. ASSIA thus contends that because the asserted patents in this case are owned and were developed by ASSIA, they were never licensed, and they were explicitly excluded from the Stanford sublicense. Dkt. No. 93 at 8.

### b. **Arbitration**

AT&T also argues that any dispute about the applicability of the forum selection clause must be decided in binding arbitration. Dkt. No. 87 at 13. For this assertion, AT&T points to the original DSL Optimizer Development and Distribution Agreement. Therein it says, "in the event of any dispute between the Parties arising from or relating to the interpretation, implementation, or actual or threatened breach of any provision . . . such dispute shall be resolve by binding arbitration." Dkt. No. 87-1 at § 10.2. AT&T argues that that section also reserves the question of arbitrability to the arbitrator. Dkt. No. 87 at 13. AT&T's reply argues that the arbitration and venue provisions are both in force. It relies on the text of Amendment 12 which reads that, "[e]xcept to the extent modified or amended hereby, all of the provisions of the DSLO Agreement shall continue in full force and effect." Dkt. No. 95 at 4; Dkt. No. 87-2 at 3 (ECF Numbering).

ASSIA responds that the two agreements do not interoperate the way AT&T suggests. Dkt. No. 93 at 12. It argues that the venue provision governs the Stanford Sublicense while the arbitration provision governs disputes under the DSLO agreement. *Id.* Next, ASSIA argues that if the two provisions do operate together, the later agreement supersedes the former one and the Court need only decide if the venue provision applies. *Id.* at 13. ASSIA further argues that the clauses are contradictory and thus cannot both apply. *Id.* Finally, ASSIA argues that AT&T waived arbitration by arguing that the California Court must resolve the scope of the agreements. *Id.* at 14.

Neither the venue nor the arbitration provision applies to this case and thus the Motion is **DENIED**.

The venue provision does not apply because this patent infringement lawsuit is not a Claim or counterclaim as defined in the Amendment. First, AT&T's argument that the plain and ordinary meaning of "any Claim or counterclaim" is boundlessly broad so as to literally cover any dispute between the parties is unsupported by law. AT&T does not even attempt to engage with California law on the matter or, alternatively, to argue that for some reason California law does not apply to the interpretation of the contract, despite the very same clause that AT&T relies on stating that California law applies. Dkt. No. 87-2 at § 12(e). Thus, it is undisputed that "under California law, a venue provision only applies to claims related to the agreement at issue where the provision is related to the subject matter of the contract." Dkt. No. 93 at 6. This proposition is uncontroversial and applies under federal forum selection clause interpretation as well. *See Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir. 1998) ("[W]e must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses."). Here, this patent infringement suit is entirely unrelated to the subject matter of the amendment. Amendment 12 recites that "the Parties agree to amend the DSLO Agreement by adding the following: . . . Exhibit E, entitled 'PATENT LICENSE AGREEMENT — GENERAL TERMS AND CONDITIONS,' . . . will provide the terms, conditions and covenants for the Stanford License after the Development Period . . . Dkt. No. 87-2 at 3. Furthermore, in a portion of the agreement that AT&T omits from its attachment, the agreement contains a merger clause which states that "[t]his Agreement constitutes the entire agreement between the Parties concerning its subject matter and supersedes all prior written or oral negotiations, correspondence, understandings and agreements between the Parties respecting such subject matter." Dkt. No. 93-2, § 13(j). This delimits the scope of the agreement to claims arising from the Stanford sublicense. The patents asserted here are not related.

Further belying AT&T's argument is their reliance on the definition of "Claim" from the main agreement. There the contract defines claim as "any claim, demand, notice, or legal proceedings ('Claim') for which ASSIA may be responsible *under this indemnity obligation*." Dkt. No. 87-1 at § 10.1(e) (p.35) (capitalization removed) (emphasis added). Rather than supporting AT&T's broad reading of "Claim," this language explicitly ties the scope of "Claim" to indemnity obligations, which are not at play here.

The Court is similarly unpersuaded by AT&T's license-based defense. The Court finds that the "Associated Rights" section disclaims any applicability of the agreement to "any intellectual property right owned or developed by [ASSIA]." Dkt. No. 93-2 at 5 (ECF numbering). AT&T's argument fails to cross the threshold this Court applies when considering the nexus between the case and the agreement at issue. *Zix*, 2016 WL 7042221 at *3.

Because the Court finds that the forum selection clause is inapplicable here AT&T's analysis of the *Atlantic Marine* factors for §1404(a) transfer with a forum selection clause is misplaced and insufficient to justify transfer.

The arbitration provision does not apply to this case either. The Court agrees with ASSIA that the arbitration provision governed disputes arising under the DSLO Agreement and does not extend to the Stanford Sublicense amendment. AT&T's position regarding the interplay between the arbitration provision and the venue provision presents an irreconcilable conflict. As described above, AT&T argues that the venue clause is mandatory for *all* claims. At the same time, AT&T argues that some claims, such as the applicability of the same venue provision, need to be resolved through arbitration. AT&T's reply argument about the integration of the two agreements is unpersuasive because the venue provision modifies or amends the DSLO agreement. AT&T does not argue that the DSLO agreement itself compels arbitration in this case. And the arbitration

8

agreement does not extend to the Stanford Sublicense Amendment. Thus, the arbitration clause does not control here. The Court **DENIES** AT&T's Motion to Compel Arbitration.

### III. Conclusion

For the reasons discussed above, the Court **DENIES** AT&T's Motion in its entirety.

**SIGNED this 16th day of March, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE